George R. Hirsch
BRESSLER, AMERY & ROSS
A Professional Corporation
P.O. Box 1980
Morristown, NJ  07962
325 Columbia Turnpike
Florham Park, NJ 07932
(973) 514-1200
Attorneys for Merrill Lynch Business Financial Services Inc.

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>PITTRA G.B. INTERNATIONAL, INC.<br><br>Debtor. | Case No:  06-10889 (MS)<br><br>Chapter 7<br><br>**DECLARATION OF GEORGE R. HIRSCH IN SUPPORT OF MOTION TO DISMISS** |

**GEORGE R. HIRSCH,** of full age, pursuant to 28 U.S.C. § 1746, declares as follows:

1.    I am a member of Bressler, Amery & Ross, P.C., attorneys for Merrill Lynch Business Financial Services Inc. ("MLBFS").  MLBFS is a secured creditor in this bankruptcy case with a filed claim in the amount of $4,187,250.43 against the Debtor PITTRA GB International, Inc. ("PITTRA").

2.    We also represent MLBFS in an action pending in the United States District Court against Arthur Kupperman, E. Ross Browne, and PGB International, LLC ("PGB"), bearing Docket No: 06-CV-4802 (DMC) (the "District Court Action").  In the District Court Action, MLBFS seeks to recover the indebtedness which is the subject of the Proof of Claim based on guaranties, fraud, and other theories.  When originally

filed, the District Court Action included Paulette Krelman as a defendant.  Ms. Krelman

filed a Chapter 7 Petition on January 3, 2007 (Docket No: 07-10121 (MS)), staying the

District Court Action as to her.

3.     In responding to interrogatories in the District Court Action last month, we

reviewed the directors' resolution in the instant bankruptcy case.    The specific

interrogatory involved asked us to specify Mr. Browne's role in any fraud connected with

this bankruptcy case.  We believed that as part of the answer, we could point to Mr.

Browne's having voted as a director for the Chapter 7 filing.  However, upon reviewing

the resolution, we learned that Arthur Kupperman had signed as "sole director."  Exhibit

"A" hereto.

4.     We thereupon obtained a copy of the recording of the 341(a) meeting

minutes in this case.    There, Mr. Kupperman testified that he had purchased the

PITTRA stock of Ms. Krelman and Mr. Browne in 2004.  The documents produced by

the law firm which filed the Debtor's Petition, Becker Meisel, reflect that Mr. Kupperman

made the same representation to them.  He also provided them with letters dated in

November 2004 which he claimed were from Mr. Browne and Ms. Krelman transferring

their shares of PITTRA to him.  Exhibit "B" hereto.  As Becker Meisel later learned, Mr.

Kupperman created forged opinion letters purporting to be issued by that law firm and

purporting to be signed by Ben Becker.  Exhibit "C" hereto.

5.     Documents produced by various law firms previously representing the

Debtor herein reflect that the shareholders of PITTRA are Paulette Krelman (85%) and

E. Ross Browne (15%), that PITTRA's officers are Arthur Kupperman (President), E.

2

Ross Browne (Vice President), and Paulette Krelman (Secretary and Treasurer), and

that Arthur Kupperman and Paulette Krelman are the two directors.  Exhibit "D" hereto.

6.    As late as May 26, 2005, in personal financial statements given to

MLBFS, Paulette Krelman states that she is an officer of PITTRA, holding 85% of its

100 issued shares.  Exhibit "E" hereto.  As of that same date, Mr. Kupperman's

personal financial statement reflects no stock ownership interest in PITTRA.  Exhibit "F"

hereto.

7.    In responding to question 18 in the Statement of Affairs in her own

bankruptcy case filed in January 2007 (Docket No: 07-10121 (MS)), Paulette Krelman

lists an 85% interest in PITTRA with no end date.  Exhibit "G" hereto.

I declare under penalty of perjury that the foregoing is true and correct.

George R. Hirsch

Dated:  October 23, 2007

3

# EXHIBIT "A"

## CORPORATE RESOLUTION OF PITTRA G.B. INTERNATIONAL, INC.

I, ARTHUR KUPPERMAN, President and sole Director of PITTRA G.B.
International, Inc., a New Jersey corporation (the "Company"), certify that a Unanimous
Written Consent of the Board of Directors of the Company was executed by me as the
sole Director of the Company on the 9th day of February 2006 in which the following
resolutions were duly adopted in accordance with the requirements of the New Jersey
Business Corporation Law, and that said resolutions have not been modified or rescinded
and are still in full force and effect on the date hereof:

> RESOLVED, that in the judgment of the Board of Directors
> of the Company, it is desirable and in the best interest of the
> Company and its creditors that a petition be filed by the Company
> seeking relief under the provisions of Chapter 7, Title 11 of the
> United States Code, (the "Bankruptcy Code"); and it was further

> RESOLVED, that Arthur Kupperman, the President of the
> Company is hereby authorized, empowered and directed, in the
> name and on behalf of the Company, to execute and verify a petition
> under Chapter 7 of the Bankruptcy Code and cause same to be filed
> in the United States Bankruptcy Court for the District of New Jersey
> at such time as said officer executing such Chapter 7 petition shall
> determine; and it was further

> RESOLVED, that the law firm of Becker Meisel LLC is
> hereby employed as attorneys for the Company in the Company's
> Chapter 7 case; and it was further

> RESOLVED, that Arthur Kupperman as President of the
> Company is hereby authorized, empowered and directed to execute
> and file all petitions, schedules, statement of financial affairs,
> motions, lists, applications, pleadings and other papers regarding the
> Company's Chapter 7 case, and take and perform any and all further
> acts and deeds which such officer deems necessary, proper or

desirable in connection with the Company's Chapter 7 case; and it was further

RESOLVED, that Arthur Kupperman as President of the Company is hereby authorized, empowered and directed, in the name and on behalf of the Company, to cause the Company to enter into, execute, deliver, certify and file and/or record, and perform such agreements, instruments, motions, affidavits, applications for approvals or rulings of government or regulatory authorities, certificates or other documents, and to take such other action as in the judgment of such officer shall be or become necessary, proper and desirable in connection with the Company's Chapter 7 case; and it was further

RESOLVED, that any and all past actions heretofore taken by Arthur Kupperman as President and/or sole director of the Company in the name and on behalf of the Company in furtherance of any or all of the preceding resolutions be, and the same hereby are, ratified confirmed and approved.

IN WITNESS WHEREOF, I have hereunto set my hand, this 9th day of February 2006.


/s/ Arthur Kupperman
ARTHUR KUPPERMAN, President and Sole Director

# EXHIBIT "B"

**Doug Kent**

| | |
|---|---|
| **From:** | Arthur Kupperman [akupperman@pgb-international.com] |
| **Sent:** | Thursday, February 09, 2006 11:35 AM |
| **To:** | Doug Kent |
| **Subject:** | Agreement with Ross |

IMAGE (6).TIF (11
KB)

      Attached is a copy of the original agreement entered into with Ross for his
shares.

See you in a little while.

Best regards

PTMC-006539

**E. Ross Browne**
27 Waterford Drive
Montville, New Jersey

November 4, 2004

Mr. Arthur Kupperman
43 Hampshire Drive
Mendham, NJ 07945

Please accept this as confirmation that for the sum of $2.00, receipt of which is hereby
acknowledged, I sell and convey to you my 15 shares of ownership in PITTRA G.B.
International, Inc.

Very truly yours,

E. Ross Browne

PTMC-006540

**Paulette Krelman**
43 Hampshire Drive
Mendham, New Jersey 07945

November 1, 2004

Mr. Arthur Kupperman
43 Hampshire Drive
Mendham, NJ 07945

Please accept this as confirmation that for the sum of $10.00, receipt of which is hereby acknowledged, I sell and convey to you my 85 shares of ownership in PITTRA G.B. International, Inc.

Very truly yours,

Paulette Krelman

PTMC-006568

## Doug Kent

| | |
|---|---|
| **From:** | Arthur Kupperman [akupperman@pgb-international.com] |
| **Sent:** | Wednesday, February 08, 2006 10:05 AM |
| **To:** | Doug Kent |
| **Subject:** | Paulette resignation |



IMAGE (2).TIF (23
KB)

Attached is the resignation by Paulette.

This was done shortly after the Mitsui deal ended and I became the sole owner, director
and officer of PITTRA G.B. International, Inc.

I am looking in my files later today for the actual endorsed certificate.

1

**PTMC-006566**

**Paulette Krelman**
43 Hampshire Drive
Mendham, New Jersey 07945

November 1, 2004

To Whom It May Concern:

Effective immediately, I hereby resign as a director of PITTRA G.B. International, Inc.

In addition, I resign as Secretary/Treasurer of PITTRA G.B. International, Inc. immediately.

Very truly yours,

Paulette Krelman

# EXHIBIT "C"

Case 06-10889-MS    Doc 40-3    Filed 10/23/07    Entered 10/23/07 16:43:18    Desc
Declaration Of George R. Hirsch In Support Of Motion To Dismiss with exhibits    Page 14 of 61
Case 2:05-cv-03008-MC-MCA Document 5-1    Filed 06/07/2005    Page 14 of 15

## CERTIFICATION OF BEN H. BECKER

Ben H. Becker, of full age, certifies as follows:

1.     I am an attorney at law of the State of New Jersey and a founding member of the law firm Becker Meisel, LLC.

2.     My firm and I from time to time handled matters for PITTRA G.B. International, Inc.

3.     I was recently shown a letter dated January 16, 2004, addressed to Arthur Kupperman purporting to be from Becker Meisel, LLC and purporting to bear my signature .    A copy of the letter, which purports to be a "summary of the basis for, and status of, certain pending lawsuits against PITTRA G.B. International, Inc." is annexed hereto as Exhibit "A".

4.     I was also recently shown a letter dated May 28, 2004, addressed to Arthur Kupperman, purporting to be from Becker Meisel, LLC and purporting to bear my signature entitled "Updated Status Letter".    A copy of the letter is annexed hereto as Exhibit "B".

5.     I can state categorically that <u>neither</u> letter was issued by my firm.  The signatures that purport to be mine are not my signature.  The initials at the bottom of the letters are not in a format typical of this firm.  The secretary's initials in the letters are not those of my secretary. The letters are  not "justified" on the right margin in the style of my firm.  The font is also not typical of the font used by my secretary.  Most importantly, the substance of the letters is wholly unknown to me.   I searched our computer records and saw no similar letters.

I certify that the foregoing statements made by me are true.   I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
Ben H. Becker

Dated:   September 29, 2006

# EXHIBIT A

Case 06-10889-MS    Doc 40-3    Filed 10/23/07    Entered 10/23/07 16:43:18    Desc
Declaration Of George R. Hirsch In Support Of Motion To Dismiss with exhibits    Page 16 of 61
Case Case 2:33-av-00001-MCA Document 1 Filed 05/30/2006 Page 1 of 19

# BECKER MEISEL LLC
ATTORNEYS AT LAW
EISENHOWER PLAZA II
354 EISENHOWER PARKWAY, SUITE 2800
LIVINGSTON, NEW JERSEY 07039

BEN H. BECKER
STACEY L. MEISEL*
MARTIN L. BOROSKO

MICHAEL A. OXMAN◦
ALLEN J. UNDERWOOD II
MILICA A. FATOVICH
MATTHEW S. CONNOR
MARIA N. FISHER*

OF COUNSEL
DOUGLAS A. KENT
ANTHONY J. VIZZONI

ALSO MEMBER OF PA BAR*
ALSO MEMBER OF NY BAR◦
ALSO MEMBER OF D.C. BAR`

TELEPHONE 973-422-1100
FACSIMILE 973-422-9122

440 THIRD AVENUE
13TH FLOOR
NEW YORK, NEW YORK 10022

January 16, 2004

Please reply to New Jersey Office

Mr. Arthur Kupperman
President
PITTRA G.B. International, Inc.
6 South Street    Suite 301
Morristown, New Jersey 07960

Dear Arthur,

In connection with a pending loan extension and credit line increase by Merrill Lynch
Business Financial Services, Inc., you have requested us to prepare a summary of the
basis for, and status of, certain pending lawsuits against PITTRA G.B. International, Inc.
In this regard, please be advised as follows:

General background

Part of the lawsuit with each of the below captioned companies relates to direct or
contingent liabilities for anti-dumping duties impose by the U.S. Department of
Commerce.   In order to help explain this situation, the following is a general outline of
the anti-dumping case and the effects of such case.

Starting in November 1999 an anti-dumping investigation was commenced for apple
juice concentrate shipped from China to the US. As a result of the investigation, anti-
dumping duties from 0% to approximately 51% were imposed on Chinese producers of
apple juice concentrate. Specific duties were imposed on each of 14 companies and all
other companies received the maximum rate of approximately 51%. Such anti-dumping
duties are reviewed on an annual basis during a period of 5 years. Furthermore, the initial
anti-dumping findings were challenged by certain of the Chinese producers.

Anti-dumping duty rates are set on an annual basis by the Department of Commerce.
Such rates are estimated rates subject to adjustment retroactively based on the actual

Case 06-10889-MS   Doc 40-3   Filed 10/23/07   Entered 10/23/07 16:43:18   Desc
Declaration Of George R. Hirsch In Support Of Motion To Dismiss with exhibits   Page 17 of 61
Case Case 2:05-cv-00000-MDC-M Document 1 Filed 10/03/2008 Page Page 17 of 19

calculations prepared for a given review period. During the year, the Chinese exporter, or the importer of record, deposits estimated duties with the U.S. Customs department. Subsequent to the review period, estimated rates are revised to actual rates and adjustments are made to either refund the excess of the estimated payments or bill the Chinese exporter, or the importer of record, for any deficiency in the deposit amount as opposed to the final rate.

This case has been particularly difficult and troublesome since the initial findings by the Department of Commerce were revised on the basis of a challenge (improper surrogate country costs for operating expenses) and 3 years after the imposition of initial duties, the estimated rates were revised.

By way of further explanation, it should be understood that the primary responsibility for any anti-dumping duties are that of the Chinese producer. However, in the event of any payment default by such producer, U. S. Customs will require the importer of record to make the payment.

Changsha Industrial Products & Minerals Import & export Co., Ltd. ("Changsha")

PITTRA had a business relationship with Changsha starting in approximately 1997. As a result of the initial anti-dumping investigation, Changsha was assessed a provisional anti-dumping duty rate of 14.77% on the FOB China value of all shipments to the US. Based on the non-compliance by Changsha in certain subsequent review processes, the provisional rate of 14.77% was modified to 51.72% retroactive to November 1999. Changsha did not have the funds to pay the additional duties, so PITTRA became contingently liable for any deficiencies. In addition, shipments under contracts between Changsha and PITTRA were halted by PITTRA since each contract would result in a significant loss to Changsha based on the increased duty assessment.

PITTRA estimated the potential contingent liability to be approximately $475,000. In addition, packer claims were filed by PITTRA against Changsha for non-delivery losses of approximately $120,000. Such claims were filed with the Minister of Trade for Shandong Province in China. As a result of the appeal of the initial findings as to an improper surrogate country in the initial anti-dumping duty rate assessments, the final potential contingent liability of PITTRA was estimated to be approximately $235,000.

In order to minimize any exposure, PITTRA withheld approximately $365,000 in remittances to Changsha. Such funds were specifically to be used to cover the losses incurred by PITTRA in covering the defaulted contracts and also provide a contingency fund for any assessments by U.S. Customs for anti-dumping duties.

Negotiations are proceeding with Changsha to settle this matter. It is anticipated the final settlement will be made within the next 10 days based on a payment by PITTRA of $40,000 to Changsha.

<u>ShaanXi Machinery & Equipment Import & Export Corp. ("SAAME")</u>

PITTRA had a business relationship with SAAME starting in approximately 1995.  As a result of the initial anti-dumping investigation, SAAME was assessed a provisional anti-dumping duty rate of 9.45% on the FOB China value of all shipments to the US.  Based on the initial review by the Department of Commerce, the provisional rate of 9.45% was modified to 21.67% retroactive to November 1999.  SAAME did not escrow the funds to pay the additional duties, so PITTRA became contingently liable for any deficiencies.  In addition, shipments under contracts between SAAME and PITTRA were halted by SAAME since each contract would result in a significant loss to SAAME based on the increased duty assessment.

PITTRA estimated the potential contingent liability to be approximately $235,000.  In addition, packer claims were filed by PITTRA against SAAME for non-delivery losses of approximately $220,000.  Such claims were filed with the Minister of Trade for ShaanXi Province in China.  As a result of the appeal of the initial findings as to an improper surrogate country in the initial anti-dumping duty rate assessments, the final potential contingent liability of PITTRA was estimated to be approximately $125,000.

In order to minimize any exposure, PITTRA withheld approximately $350,000 in remittances to SAAME.  Such funds were specifically to be used to cover the losses incurred by PITTRA in covering the defaulted contracts and also provide a contingency fund for any assessments by U.S. Customs for anti-dumping duties.

Negotiations are proceeding with SAAME to settle this matter.  It is anticipated the final settlement will be made within the next 30 days based on a payment by PITTRA of $60,000 to SAAME.

I trust the above is a satisfactory explanation of the pending lawsuits.  If you have any questions, please do not hesitate to let me know.

Best regards,

Ben Becker

BB:gv

# PITTRA G.B. International, Inc.

6 South Street    Suite 301
Morristown, New Jersey 07960 USA

*Telefax transmission*

---

**Date:**    1/20/04

**To:**    Aaron Vagelatos
Merrill Lynch Business Financial Services
Phone:    [1] 312-499-3332
Fax:    [1] 312-499-3256

**From:**    Arthur Kupperman
Phone:    [1] 973-401-9000
Fax:    [1] 973-401-9001
E-mail:    akupperman@pittra.com

**Pages:**    *4, including this cover page*

---

**Subject:**    Lawyer letter

Attached you will find the letter from the lawyer concerning the lawsuits.

If you need any additional information, please do not hesitate to let me know.

Case 06-10889-MS    Doc 40-3    Filed 10/23/07    Entered 10/23/07 16:43:18    Desc
Declaration Of George R. Hirsch In Support Of Motion To Dismiss with exhibits.    Page 20 of 61
Case 2:06-cv-03802-DMC-MCA   Document 1 - Filed 08/03/2006   Page 10 of 19

**EXHIBIT B**

Case 06-10889-MS    Doc 40-3    Filed 10/23/07    Entered 10/23/07 16:43:18    Desc
Declaration Of George R. Hirsch In Support Of Motion To Dismiss with exhibits.    Page 21 of 61
Case Case 2:04-cv-02000-DMC-MDA Document 1    Filed 03/05/2005 Page Page 19 of 19

# ʙECKER MEISEL LLC

ATTORNEYS AT LAW
### EISENHOWER PLAZA II
354 EISENHOWER PARKWAY, SUITE 2800
LIVINGSTON, NEW JERSEY 07039

BEN H. BECKER
STACEY L. MEISEL*◊
MARTIN L. BOROSKO
GEORGE CACOULIDIS◊

MICHAEL A. OXMAN◊
ALLEN J. UNDERWOOD II
MILICA A. FATOVICH
MATTHEW B. CONNOR
MARIA N. FISHER*
AMANDA L. SCHULTZ
MICHAEL E. HOLZAPFEL

SPECIAL COUNSEL
DANIEL J. O'HERN

OF COUNSEL
DOUGLAS A. KENT
ANTHONY J. VIZZONI
DANIEL J. O'HERN, JR.

ALSO MEMBER OF PA BAR*
ALSO MEMBER OF NY BAR
ALSO MEMBER OF D.C. BAR*
ALSO MEMBER OF CT BAR

TELEPHONE 973-422-1100
FACSIMILE 973-422-9122

99 MADISON AVENUE
8TH FLOOR
NEW YORK, NEW YORK 10016
TELEPHONE 212-421-4430

THE GALLERIA
2 BRIDGE AVENUE
BUILDING 2, SECOND FLOOR
RED BANK, NEW JERSEY 07701
TELEPHONE 732-571-6700

May 28, 2004

Mr. Arthur Kupperman
President
PITTRA G.B. International, Inc.
6 South Street        Suite 301
Morristown, New Jersey 07960

UPDATED STATUS LETTER

Dear Arthur;

In connection with a pending loan extension and credit line increase by Merrill Lynch Business Financial Services, Inc., you have requested us to prepare an updated summary of the basis for, and status of, certain pending lawsuits against PITTRA G.B. International, Inc. In this regard, please be advised as follows:

General background

Part of the lawsuit with each of the below captioned companies relates to direct or contingent liabilities for anti-dumping duties impose by the U.S. Department of Commerce. In order to help explain this situation, the following is a general outline of the anti-dumping case and the effects of such case.

Starting in November 1999 an anti-dumping investigation was commenced for apple juice concentrate shipped from China to the US. As a result of the investigation, anti-dumping duties from 0% to approximately 51% were imposed on Chinese producers of apple juice concentrate. Specific duties were imposed on each of 14 companies and all other companies received the maximum rate of approximately 51%. Such anti-dumping duties are reviewed on an annual basis during a period of 5 years. Furthermore, the initial anti-dumping findings were challenged by certain of the Chinese producers.

Case 06-10889-MS    Doc 40-3    Filed 10/23/07    Entered 10/23/07 16:43:18    Desc
Declaration Of George R. Hirsch In Support Of Motion To Dismiss with exhibits    Page 22 of 61
Case 2:06-cv-03480-DMC-MCA  Document 1-1  Filed 08/03/2006  Page 12 of 19

Anti-dumping duty rates are set on an annual basis by the Department of Commerce. Such rates are estimated rates subject to adjustment retroactively based on the actual calculations prepared for a given review period. During the year, the Chinese exporter, or the importer of record, deposits estimated duties with the U.S. Customs department. Subsequent to the review period, estimated rates are revised to actual rates and adjustments are made to either refund the excess of the estimated payments or bill the Chinese exporter, or the importer of record, for any deficiency in the deposit amount as opposed to the final rate.

This case has been particularly difficult and troublesome since the initial findings by the Department of Commerce were revised on the basis of a challenge (improper surrogate country costs for operating expenses) and 3 years after the imposition of initial duties, the estimated rates were revised.

By way of further explanation, it should be understood that the primary responsibility for any anti-dumping duties are that of the Chinese producer. However, in the event of any payment default by such producer, U. S. Customs will require the importer of record to make the payment.

Approximately 3 months ago, the Department of Commerce has modified the surrogate country and certain overhead cost items and as a result they have again modified the initial anti-dumping margins and the anti-dumping margins for the second and third review periods.

In the case of Changsha Industrial Products & Minerals Import & export Co., Ltd., such margins were modified to 0% for the first review period and approximately 51% for all subsequent review periods. The refund due for the first review period will be offset against the liability for the subsequent review periods. These calculations are presently in the process of being summarized by the Department of Commerce and it is expected there will be a net refund to Changsha (primarily due to the much higher imports during the first year of the anti-dumping investigation). The net refund will be applied against the claim of Changsha Industrial Products & Minerals Import & export Co., Ltd. against PITTRA G. B. International, Inc.

In the case of ShaanXi Machinery & Equipment Import & Export Corp., the margins were reduced. Accordingly, this company will receive a refund from the U. S. Customs office based on the original assessment of 9.45% which has now been reduced to 0%. As such, the refund is being applied against the claim of ShaanXi Machinery & Equipment Import & Export Corp. against PITTRA G.B. International, Inc.

Changsha Industrial Products & Minerals Import & export Co., Ltd. ("Changsha")

PITTRA had a business relationship with Changsha starting in approximately 1997. As a result of the initial anti-dumping investigation, Changsha was assessed a provisional anti-dumping duty rate of 14.77% on the FOB China value of all shipments to the US.

Case 06-10889-MS    Doc 40-3    Filed 10/23/07    Entered 10/23/07 16:43:18    Desc
Declaration Of George R. Hirsch In Support Of Motion To Dismiss with exhibits    Page 23 of 61
Case 2:08-bk-00adDMC-Mocument Document 1    Filed 05/20/20 Page 23 of 19

Based on the non-compliance by Changsha in certain subsequent review processes, the provisional rate of 14.77% was modified to 51.72% retroactive to November 1999. Changsha did not have the funds to pay the additional duties, so PITTRA became contingently liable for any deficiencies. In addition, shipments under contracts between Changsha and PITTRA were halted by Changsha since each contract would result in a significant loss to Changsha based on the increased duty assessment.

PITTRA estimated the potential contingent liability to be approximately $475,000. In addition, packer claims were filed by PITTRA against Changsha for non-delivery losses of approximately $120,000. Such claims were filed with the Minister of Trade for Shandong Province in China. As a result of the appeal of the initial findings as to an improper surrogate country in the initial anti-dumping duty rate assessments, the final potential contingent liability of PITTRA was estimated to be approximately $235,000.

In order to minimize any exposure, PITTRA withheld approximately $365,000 in remittances to Changsha. Such funds were specifically to be used to cover the losses incurred by PITTRA in covering the defaulted contracts and also provide a contingency fund for any assessments by U.S. Customs for anti-dumping duties.

At this time, it is not possible to determine the net effect of the revision to the anti-dumping rates. It appears that after application of the net refund, there may be a balance of less than $10,000 due from PITTRA to Changsha.

ShaanXi Machinery & Equipment Import & Export Corp. ("SAAME")

PITTRA had a business relationship with SAAME starting in approximately 1995. As a result of the initial anti-dumping investigation, SAAME was assessed a provisional anti-dumping duty rate of 9.45% on the FOB China value of all shipments to the US. Based on the initial review by the Department of Commerce, the provisional rate of 9.45% was modified to 21.67% retroactive to November 1999. SAAME did not escrow the funds to pay the additional duties, so PITTRA became contingently liable for any deficiencies. In addition, shipments under contracts between SAAME and PITTRA were halted by SAAME since each contract would result in a significant loss to SAAME based on the increased duty assessment.

PITTRA estimated the potential contingent liability to be approximately $235,000. In addition, packer claims were filed by PITTRA against SAAME for non-delivery losses of approximately $220,000. Such claims were filed with the Minister of Trade for ShaanXi Province in China. As a result of the appeal of the initial findings as to an improper surrogate country in the initial anti-dumping duty rate assessments, the final potential contingent liability of PITTRA was estimated to be approximately $125,000.

In order to minimize any exposure, PITTRA withheld approximately $350,000 in remittances to SAAME. Such funds were specifically to be used to cover the losses

Case 06-10889-MS    Doc 40-3    Filed 10/23/07    Entered 10/23/07 16:43:18    Desc
Declaration Of George R. Hirsch In Support Of Motion To Dismiss with exhibits    Page 24 of 61
Case 2:05-cv-03490-DMC-MCA    Document 1    Filed 03/2005    Page 18 of 19

incurred by PITTRA in covering the defaulted contracts and also provide a contingency
fund for any assessments by U.S. Customs for anti-dumping duties.

As SAAME will receive a refund of over-assessed anti-dumping duties as outlined above,
the net settlement will now favor PITTRA G.B. and within the next 90 days we expect to
file for a dismissal of the lawsuit. PITTRA and SAAME will adjust future purchase
contract values to effect a refund to PITTRA for the losses suffered by PITTRA for non-
delivery of contracts.

Very truly yours,
BECKER MEISEL LLC

Ben Becker

BB/gv

# EXHIBIT "D"

# PITNEY, HARDIN, KIPP & SZUCH LLP

**PETER M. MACALUSO**

DIRECT DIAL NUMBER
973-966-8259

E-MAIL
PMACALUSO@PHKS.COM

(MAIL TO)
P.O. BOX 1945
MORRISTOWN, NEW JERSEY 07962-1945

——

(DELIVERY TO)
200 CAMPUS DRIVE
FLORHAM PARK, NEW JERSEY 07932-0950
(973) 966-6300
FACSIMILE (973) 966-1550

711 THIRD AVENUE
NEW YORK, NEW YORK 10017-4014
(212) 297-5800
FACSIMILE (212) 682-3485

125 HALF MILE ROAD
RED BANK, NEW JERSEY 07701
(732) 224-1200
FACSIMILE (732) 224-3630

January 30, 2002

VIA UNITED PARCEL SERVICE

Mr. Arthur Kupperman
President
PITTRA G.B. International, Inc.
123 Madison Avenue
Madison, NJ 07940

Re:    Post-Closing Matters

Dear Arthur:

Congratulations again on closing the Camerican and G.B. International transactions! Now that these transactions are complete, I am writing this letter to inform you of the future obligations of PITTRA G.B. International, Inc. ("Pittra") under these agreements and to detail Pittra's current corporate structure.

I am also enclosing a copy of the essential deal documents from both of these transactions. We will prepare closing binders with all documents for both deals shortly.

## Pittra Corporate Structure

1.    Shareholders

   a.    Paulette Krelman – 85 shares

   b.    Ross Browne – 15 shares

- The signed stock certificates should be delivered to Paulette and Ross

831953A01013002

**PTT-000476**

PITNEY, HARDIN, KIPP & SZUCH LLP

**Mr. Arthur Kupperman**
January 30, 2002
Page 2

    2.   Directors

        a.   Arthur Kupperman

        b.   Paulette Krelman

    3.   Officers

        a.   President: Arthur Kupperman

        b.   Secretary and Treasurer: Paulette Krelman

**Pittra's Obligations Under Camerican International, Inc. ("Camerican") Transaction**

    1.   Purchase Agreement

- Pittra cannot use the name "Camerican" or "Pittra/Camerican"

- Pittra assumes the credit risk for the Accounts Receivable of Mason County Fruit Packers unless Mason County files a petition in bankruptcy on or before January 31, 2002

- Pittra assumes all liability and responsibility for the performance of the settlement agreement between Camerican and Brauns Apfel

    2.   Promissory Note

- Payments under the Note are due as follows:

  - January 31, 2002 - $954,795, with interest from January 24, 2002 at the prime rate announced by Citibank, N.A.

  - February 15, 2002 - $2,262,990, with interest from January 24, 2002 at the prime rate announced by Citibank, N.A., based on releases of inventory from Camerican to Pittra in increments of $250,000 with 60% of the value of each release paid within 7 days of such release and the balance payable on or before February 15, 2002

  - March 25, 2002 - $21,165, without interest

PTT-000477

PITNEY, HARDIN, KIPP & SZUCH LLP
**Mr. Arthur Kupperman**
January 30, 2002
Page 3

- *As previously discussed, please note that if any payment is not timely made, Camerican may, immediately and without notice, declare the entire remaining balance due and payable*

3.    Post Closing Agreement

- As previously discussed, under the terms of the Post Closing Agreement, any post closing adjustments need to be completed by January 31, 2002; however, both parties have agreed in writing to extend that date until February 1, 2002

4.    LaSalle Bank Litigation Agreement

- Pittra is responsible for one-half of all legal fees and expenses incurred by Camerican for legal services provided by Miller, Faucher & Cafferty on or after January 22, 2002 in defense of this action and one-half of any settlement or judgement resulting from this action; However, Pittra has no obligation to pay such Costs until such Costs exceed either $43,387 or $45,790 in the event Camerican recovers on the claim against Port Newark Refrigerated Warehouse

**Pittra's Obligations Under G.B. International, Inc. ("GBI") Transaction**

1.    Asset Purchase Agreement

- Pittra assumes the lease for the property located at 123 Madison Avenue, Madison, New Jersey with rent of $5,416.66 per month

- Pittra indemnifies GBI for any Loss resulting from any misrepresentation or breach of any representation or warranty or from any Assumed Liability once such Losses exceed $5,000; representations and warranties of Pittra last for three years other than representations about corporate authority, which do not terminate

- Pittra assumes responsibility for GBI's 401(k) Plan and GBI's Health Benefits Plan

2.    Employment Agreement

- Browne is employed by Pittra as its Chief Operating Officer from September 1, 2001 to December 31, 2003 unless Agreement is terminated pursuant to Section 7

PTT-000478

PITNEY, HARDIN, KIPP & SZUCH LLP

**Mr. Arthur Kupperman**
January 30, 2002
Page 4

- Pittra will pay Browne $156,00 per year and grant him an option to purchase 54 shares of Pittra stock over a two year period: 21 shares may be purchased on or after January 15, 2003 and the remainder may be purchased on or after January 15, 2004

- Other benefits for Browne include 4 weeks paid vacation and discretionary bonuses

3.    Option Agreement

- Pittra must inform Browne of the Option Price determined in accordance with the formula attached to the Option Agreement as Schedule A within 15 days following the end of each calendar quarter

- Option terminates on December 31, 2004

Should you have any questions about any of Pittra's responsibilities or its corporate structure, please do not hesitate to contact me.

Very truly yours,

PETER M. MACALUSO

Enclosures

cc:    Michael Zelenty, Esq.

PTT-000479

**From:**     "Doug A. Kent" <dakent@beckermeisel.com>
**To:**       <Rloewenstein@Budd-larner.com>
**Date:**     5/30/2003 9:44:04 AM
**Subject:**  Pittra G.B. International, Inc.  to PGB International, LLC

      Per our telephone conversation yesterday, subject to your approval, I have decided to substitute a consent of all of the Directors regarding the sale of certain assets by Pittra G.B. International, Inc. ("Pittra") to PGB International, LLC instead of the Resolution of Special Meeting of Board of Directors of Pittra.  Accordingly, I am e-mailing herewith a copy of this Consent of Directors.

      I will fax you today a copy of Pittra's by-laws that allows this sale to take place upon the consent of all Directors.

      Additionally, with my new proposed paragraph 20 of the Asset Purchase Agreement, the Assignment of Customer Contracts will no longer be necessary. Please let me know when you have established a date for the closing with Mitsui.  Thank you.

Douglas A. Kent

**********************************************************

CONFIDENTIALITY NOTICE:  This e-mail contains information that is privileged, confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use.  You are prohibited from copying, distributing, or otherwise using this information if you are not the intended recipient.  If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system.  Thank you.

BECKER MEISEL LLC
Eisenhower Plaza II
354 Eisenhower Parkway, Suite 2800
Livingston, New Jersey 07039
Phone (973) 422-1100
Fax (973) 422-9122
www.beckermeisel.com

**CC:**       <akupperman@pittra.com>

BL 000196

## CONSENT OF BOARD OF DIRECTORS TO SALE

The undersigned being the only Directors of Pittra G. B. International, Inc. ("Pittra"), hereby consent to the following resolutions:

**RESOLVED** that Arthur Kupperman as President of the Corporation is hereby authorized of behalf of Pittra to execute and deliver to PGB the Asset Purchase Agreement (the "Asset Purchase Agreement"), a copy of which is attached hereto as <u>Exhibit A</u>, pursuant to which Pittra sells and assigns certain of its assets to PGB; and it is further

**RESOLVED** that Arthur Kupperman is hereby authorized on behalf of Pittra to execute and deliver to PGB such other agreements, assignments, certifications, letters, instruments and documents, as he deems necessary to consummate the transactions contemplated by the Asset Purchase Agreement.

Dated: _____          _____
                                          Arthur Kupperman


Dated:_____          _____
                                          Paulette Krelman

S:\Docs\Becker Meisel\PITTRA G.B. International\Pittra SPITTRA SALE\PITTRA SALE Consent of Directors to sale ver of 2-89-03.doc

BL 000197

# BECKER MEISEL LLC

### ATTORNEYS AT LAW
## EISENHOWER PLAZA II
## 354 EISENHOWER PARKWAY, SUITE 2800
## LIVINGSTON, NEW JERSEY 07039

Telephone  973-422-1100
Telecopier  973-422-9122

## FACSIMILE TRANSMITTAL COVERSHEET

**DATE:** May 30, 2003

**TO:** Robert Loewenstein, Esq.

**FAX:** (973) 315-4417

**RE:** Pittra G. B. International, Inc. ("Pittra") to PGB - International, LLC

**FROM:** Douglas A. Kent, Esq.

**MESSAGE:** Per my e-mail sent to you earlier today, I am faxing herewith a copy of the by-laws of Pittra. I specifically draw you attention to Section 9 of the by-law, which allows action by the Board of Directors by their consent.

**TOTAL PAGES:** 6
(excluding cover sheet)

S:\Docs\Becker Meisel\PITTRA G.B. International\Pittra S\CORRESPONDENCE\PITTRA-S fax cover sheet to R. Loewenstein 5-30-03.doc

THE INFORMATION CONTAINED IN THIS FACSIMILE MESSAGE IS ATTORNEY CLIENT PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPY OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.

BY-LAWS

OF

PITTRA G.B. International, Inc.


Section 1. <u>Annual Meeting</u>.  The annual meeting of shareholders shall be held each

year on such date as may be designated by the Board, upon not less than ten nor more than sixty

days' written notice of the time, place and purposes of the meeting, at the principal office of the

corporation, or such other place as shall be specified in the notice of meeting, in order to elect

directors of the corporation and transact such other business as shall come before the meeting.


Section 2. <u>Special Meetings of Shareholders</u>.  Special meetings of shareholders may

be called for any purpose or purposes, by the president or the Board or by any member of the Board.

Special meetings shall be held at the principal office of the corporation or at such place as shall be

specified in the notice of meeting.  Special meetings shall be called upon written notice of the time,

place and purposes of the meeting given not less than ten nor more than sixty days prior to the date

of the meeting.


Section 3. <u>Waivers of Notice of Shareholder Meetings; Adjournments</u>.  Notice of a

meeting of shareholders need not be given to any shareholder who signs a waiver of such notice, in

person or by proxy, whether before or after the meeting.  The attendance of any shareholder at a

meeting, in person or by proxy, without protesting prior to the conclusion of the meeting the lack of

notice of such meeting, shall constitute a waiver of notice by such shareholder.  When any meeting

is adjourned to another time or place, it shall not be necessary to give notice of the adjourned

795922A01112801

PTMC-003906

meeting if the time and place to which the meeting is adjourned are announced at the meeting at which the adjournment is taken and at the adjourned meeting only such business is transacted as might have been transacted at the original meeting.

Section 4. Action Without Shareholder Meeting. Any action required or permitted to be taken at a meeting of shareholders may be taken without a meeting if all the shareholders entitled to vote thereon consent thereto in writing and such written consents are filed with the minutes of proceedings of shareholders. Such shareholder action may be taken without a meeting and without unanimity pursuant to N.J.S.A. 14A:5-6.

Section 5. Board of Directors; General Powers. The business and affairs of the corporation shall be managed by its board of directors (herein referred to as the "Board").

Section 6. Number and Term of Director; Regular Meetings. The number of director shall be one or such greater number not in excess of 10 as may be determined from time to time by the Board. The term of office of each director shall be from the time of election and qualification until the annual meeting of shareholders next succeeding such election and until a successor shall have been elected and shall have qualified, or until the earlier death, resignation or removal of the director. A regular meeting of the Board for the election of officers and such other business as may come before the meeting shall be held without notice immediately following the annual meeting of shareholders at the same place. The Board may provide for additional regular meetings which may be held without notice by resolution adopted at any meeting of the Board.

795922A01112801

PTMC-003907

Section 7. <u>Special Meetings of the Board</u>.  Special meetings of the Board for any purpose or purposes may be called at any time by any one of the directors.  Such meetings shall be held upon two days notice given personally or by telephone, two days notice given by electronic mail (including facsimile) receipt of which is electronically or orally confirmed or four business days notice given by depositing notice in the mails, postage prepaid.  Such notice shall specify the time and place of the meeting.

Section 8. <u>Waivers of Notice of Board Meetings; Adjournment</u>.  Notice of a meeting of the Board need not be given to any director who signs a waiver of notice whether before or after the meeting, or who attends the meeting without protesting the lack of notice prior to the conclusion of the meeting. Neither the business to be transacted at, nor the purpose of, any meeting of the Board need be specified in the notice or waiver of notice of such meeting.  Notice of an adjourned meeting need not be given if the time and place are fixed at the meeting adjourning and if the period of adjournment does not exceed ten days in any one adjournment.

Section 9. <u>Action Without Meeting</u>.  The Board or any committee thereof may act without a meeting if, prior or subsequent to such action, each member of the Board or of each committee shall consent in writing to such action.  Such written consent or consents shall be filed with the minutes of the corporation.

Section 10. <u>Quorum of Board of Directors</u>.  One director shall constitute a quorum of the Board for the transaction of business unless the Board consists of two directors, in which case

795922A01112801

PTMC-003908

two directors shall constitute a quorum, and unless the Board consists of three or more directors, in which case a majority of the directors shall constitute a quorum.

Section 11. <u>Vacancies in the Board of Directors</u>. Subject to anything to the contrary contained in the Certificate of Incorporation, any vacancy in the Board, including a vacancy caused by an increase in the number of directorships, may be filled by the affirmative vote of a majority of the remaining directors even though less than a quorum of the Board, or by a sole remaining director.

Section 12. <u>Officers</u>. At its regular meeting following the annual meeting of shareholders, the Board shall elect a president, a treasurer, a secretary, and such other officers as it shall deem necessary. One person may hold two or more offices but no officer shall execute, acknowledge or verify any instrument in more than one capacity if such instrument is required by law or by these by-laws to be executed, acknowledged or verified by two or more officers. The duties and authority of the officers shall be determined from time to time by the Board. Subject to any such determination, the officers shall have the following duties and authority:

(a) The president shall be chief executive officer of the corporation and shall have general charge and supervision over and responsibility for the affairs of the corporation. The president shall preside at all meetings of the shareholders and at all meetings of the Board. Unless otherwise directed by the Board, all other officers shall be subject to the authority and the supervision of the president. The president may enter into and execute in the name of the corporation contracts or other instruments not in the regular course of business which are

- 4 -

795922A01112801

PTMC-003909

authorized, either generally or specifically, by the Board. The president shall have the general powers and duties of management usually vested in the office of president of a corporation. The president may delegate from time to time to any other officer, any or all of the aforesaid duties and authority.

(b) Vice presidents, if elected, shall have such duties and possess such authority as may be delegated to them by the president.

(c) The treasurer shall have the custody of the funds and securities of the corporation and shall keep or cause to be kept regular books of account for the corporation. The treasurer shall perform such other duties and possess such other authority as are incident to his office or as shall be assigned by the president or the Board.

(d) Assistant treasurers, if elected, shall have such duties and possess such authority as may be delegated to them by the treasurer.

(e) The secretary shall cause notices of all meetings to be served as prescribed in these by-laws and shall keep or cause to be kept the minutes of all meetings of the shareholders and the Board. The secretary shall have charge of the seal of the corporation and shall perform such other duties and possess such authority as are incident to the office or as shall be assigned by the president or the Board.

(f) Assistant secretaries, if elected, shall have such duties and possess such authority as may be delegated to them by the secretary.

795922A01112801

PTMC-003910

Section 13. <u>Force and Effect of By-Laws</u>.   These by-laws are subject to the provisions of the New Jersey Business Corporation Act (the "Act") and the Certificate of Incorporation as they may be amended from time to time.   If any provision in these by-laws is inconsistent with a provision in the Act or the Certificate of Incorporation, the provision of the Act or the Certificate of Incorporation shall govern to the extent of such inconsistency.

795922A01112801

PTMC-003911

# BECKER MEISEL LLC

### ATTORNEYS AT LAW
## EISENHOWER PLAZA II
## 354 EISENHOWER PARKWAY, SUITE 2800
## LIVINGSTON, NEW JERSEY 07039

Telephone 973-422-1100
Telecopier 973-422-9122

## FACSIMILE TRANSMITTAL COVERSHEET

**DATE:**         May 30, 2003

**TO:**           Robert Loewenstein, Esq.

**FAX:**         (973) 315-4417

**RE:**           Pittra G. B. International, Inc. ("Pittra") to PGB - International, LLC

**FROM:**       Douglas A. Kent, Esq.

**MESSAGE:**     Per my e-mail sent to you earlier today, I am faxing herewith a copy of the by-laws of Pittra. I specifically draw you attention to Section 9 of the by-law, which allows action by the Board of Directors by their consent.

**TOTAL PAGES:**   6
**(excluding cover sheet)**

I:\Dept\Becker Meisel\PITTRA G.B. International\Pittra B\CORRASPONDENCE\PITTRA-6 the cover item in R. Loewenstein 5-30-03.doc

THE INFORMATION CONTAINED IN THIS FACSIMILE MESSAGE IS ATTORNEY CLIENT PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPY OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.

Form **1120**  Department of the Treasury Internal Revenue Service
**U.S. Corporation Income Tax Return**  **2002**
► Instructions are separate. See instructions for Paperwork Reduction Act Notice.

IRS use only — Do not write or staple in this space.

OMB No. 1545-0123

| For calendar year 2002 or tax year beginning | Oct 1 , 2002, ending Sep 30 , 2003 | B Employer identification number |
|---|---|---|

| A Check if a: | | | | Name | B Employer identification number |
|---|---|---|---|---|---|
| 1 Consolidated return (attach Form 851) | | Use IRS label. Otherwise, print or type. | | PITTRA G.B. International, Inc. | 22-3834289 |
| 2 Personal holding company (attach Schedule PH) | | | | Number, street, and room or suite number (if a P.O. box, see instructions.) | C Date incorporated |
| 3 Personal service corp (as defined in Regs section 1.441-3(c) — see instructions) | | | | 123 Madison Avenue | 10/01/01 |
| | | | | City or town    State    ZIP Code | D Total assets (see instructions) |
| | | | | Madison            NJ   07940 | $  2,887,478. |

E Check applicable boxes:  (1)  Initial return  (2)  Final return  (3)  Name change  (4)  Address change

|   | | | | |
|---|---|---|---|---:|
| I N C O M E | 1a Gross receipts or sales | 21,468,198. b Less returns & allowances . | c Balance ► | **1c** 21,468,198. |
| | 2 Cost of goods sold (Schedule A, line 8) | | | **2** 20,857,747. |
| | 3 Gross profit. Subtract line 2 from line 1c | | | **3** 610,451. |
| | 4 Dividends (Schedule C, line 19) | | | **4** |
| | 5 Interest | | | **5** |
| | 6 Gross rents | | | **6** |
| | 7 Gross royalties | | | **7** |
| | 8 Capital gain net income (attach Schedule D (Form 1120)) | | | **8** |
| | 9 Net gain or (loss) from Form 4797, Part II, line 18 (attach Form 4797) | | | **9** |
| | 10 Other income (see instructions — attach schedule) . See. Other. Income Statement . | | | **10** 310,000. |
| | 11 Total income. Add lines 3 through 10 | | ► | **11** 920,451. |
| D E D U C T I O N S | 12 Compensation of officers (Schedule E, line 4) | | | **12** 383,778. |
| | 13 Salaries and wages (less employment credits) | | | **13** 267,458. |
| | 14 Repairs and maintenance | | | **14** |
| | 15 Bad debts | | | **15** 368,904. |
| | 16 Rents | | | **16** 68,808. |
| | 17 Taxes and licenses | | | **17** 39,289. |
| | 18 Interest | | | **18** 267,458. |
| | 19 Charitable contributions (see instructions for 10% limitation) | | | **19** |
| | 20 Depreciation (attach Form 4562) | 20 | | **21b** |
| | 21 Less depreciation claimed on Schedule A and elsewhere on return | 21 a | | **22** |
| | 22 Depletion | | | **23** |
| | 23 Advertising | | | **24** 40,178. |
| | 24 Pension, profit-sharing, etc, plans | | | **25** 51,894. |
| | 25 Employee benefit programs | | | **26** 339,688. |
| | 26 Other deductions (attach schedule) . See. Other. Deductions. Statement . | | | **27** 1,827,455. |
| | 27 Total deductions. Add lines 12 through 26 | | ► | **28** -907,004. |
| | 28 Taxable income before net operating loss deduction and special deductions. Subtract line 27 from line 11 | | | **28** |
| | 29 Less: a Net operating loss (NOL) deduction (see instructions) | 29a | | |
| | b Special deductions (Schedule C, line 20) | 29b | | **29c** |
| T A X  A N D  P A Y M E N T S | 30 Taxable income. Subtract line 29c from line 28 | | | **30** -907,004. |
| | 31 Total tax (Schedule J, line 11) | | | **31** |
| | 32 Payments: a 2001 overpayment credited to 2002 | 32 a | | |
| | b 2002 estimated tax payments | 32b | | |
| | c Less 2002 refund applied for on Form 4466 | 32 c | d Bal ► | 32 d |
| | e Tax deposited with Form 7004 | | | 32 e |
| | f Credit for tax paid on undistributed capital gains (attach Form 2439) | | | 32 f |
| | g Credit for federal tax on fuels (attach Form 4136). See instructions | | ► | 32 g  32 h |
| | 33 Estimated tax penalty (see instructions). Check if Form 2220 is attached | | ► | **33** |
| | 34 Tax due. If line 32h is smaller than the total of lines 31 and 33, enter amount owed | | | **34** |
| | 35 Overpayment. If line 32h is larger than the total of lines 31 and 33, enter amount overpaid | | | **35** |
| | 36 Enter amount of line 35 you want: Credited to 2003 estimated tax ► | | Refunded ► | **36** |

COPY

| Sign Here | Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge. | | May the IRS discuss this return with the preparer shown below? (see inst) |
|---|---|---|---|
| | ► Signature of officer    Date | Title | Yes ☐  No ☐ |

| Paid Preparer's Use Only | Preparer's signature ► | Date 12/13/03 | Check if self-employed ☐ | Preparer's SSN or PTIN |
|---|---|---|---|---|
| | Firm's Name (or yours if self-employed), address, and ZIP Code ► | Arthur Kupperman
43 HAMPSHIRE DR.
MENDHAM            NJ   07945-2003 | | EIN
Phone No. |

CPCA0212  12/19/02

BAA

Form 1120 (2002)

PTMC-006830

Form 1120 (2002)    PITTRA G.B. International, Inc.    22-3834289    Page 2

### Schedule A    Cost of Goods Sold (see instructions)

| | | |
|---|---|---:|
| 1 | Inventory at beginning of year | 834,898. |
| 2 | Purchases | 19,395,343. |
| 3 | Cost of labor | |
| 4 | Additional Section 263A costs (attach schedule) | 627,506. |
| 5 | Other costs (attach schedule) ...See Other Costs Statement | 20,857,747. |
| 6 | Total. Add lines 1 through 5 | 0. |
| 7 | Inventory at end of year | 20,857,747. |
| 8 | Cost of goods sold. Subtract line 7 from line 6. Enter here and on line 2, page 1 | |

9a  Check all methods used for valuing closing inventory:
  (i) ☐  Cost as described in Regulations section 1.471-3
  (ii) ☒  Lower of cost or market as described in Regulations section 1.471-4
  (iii) ☐  Other (specify method used and attach explanation.) ........ ▶

b  Check if there was a writedown of subnormal goods as described in Regulations section 1.471-2(c) ...................... ▶ ☐
c  Check if the LIFO inventory method was adopted this tax year for any goods (if checked, attach Form 970) ................ ▶ ☐
d  If the LIFO inventory method was used for this tax year, enter percentage (or amounts) of closing inventory computed under LIFO ...................... | 9d |
e  If property is produced or acquired for resale, do the rules of section 263A apply to the corporation? .................. ☐ Yes  ☒ No
f  Was there any change in determining quantities, cost, or valuations between opening and closing inventory? If 'Yes,' attach explanation ...................... ☐ Yes  ☒ No

### Schedule C    Dividends and Special Deductions (see instructions)

| | | (a) Dividends received | (b) Percentage | (c) Special deductions (a) x (b) |
|---|---|---|---|---|
| 1 | Dividends from less-than-20%-owned domestic corporations that are subject to the 70% deduction (other than debt-financed stock) ...... | | 70 | |
| 2 | Dividends from 20%-or-more-owned domestic corporations that are subject to the 80% deduction (other than debt-financed stock) ...... | | 80 | |
| 3 | Dividends on debt-financed stock of domestic and foreign corporations (section 246A) | | 42 | |
| 4 | Dividends on certain preferred stock of less-than-20%-owned public utilities ........ | | 48 | |
| 5 | Dividends on certain preferred stock of 20%-or-more-owned public utilities ......... | | | |
| 6 | Dividends from less-than-20%-owned foreign corporations and certain FSCs that are subject to the 70% deduction ............. | | 70 | |
| 7 | Dividends from 20%-or-more-owned foreign corporations and certain FSCs that are subject to the 80% deduction ............. | | 80 | |
| 8 | Dividends from wholly owned foreign subsidiaries subject to the 100% deduction (section 245(b)) | | 100 | |
| 9 | Total. Add lines 1 through 8. See instructions for limitation .......... | | | |
| 10 | Dividends from domestic corporations received by a small business investment company operating under the Small Business Investment Act of 1958 ......... | | 100 | |
| 11 | Dividends from certain FSCs that are subject to the 100% deduction (see 245(c)(1)) ... | | 100 | |
| 12 | Dividends from affiliated group members subject to the 100% deduction (section 243(a)(3)) | | 100 | |
| 13 | Other dividends from foreign corporations not included on lines 3, 6, 7, 8, or 11 ... | | | |
| 14 | Income from controlled foreign corporations under subpart F (attach Form(s) 5471) ... | | | |
| 15 | Foreign dividend gross-up (section 78) | | | |
| 16 | IC-DISC and former DISC dividends not included on lines 1, 2, or 3 (section 246(d)) ... | | | |
| 17 | Other dividends ................... | | | |
| 18 | Deduction for dividends paid on certain preferred stock of public utilities ........ | | | |
| 19 | Total dividends. Add lines 1 through 17. Enter here and on line 4, page 1 ....... ▶ | | | |
| 20 | Total special deductions. Add lines 9, 10, 11, 12, and 18. Enter here and on line 29b, page 1 .................. ▶ | | | |

### Schedule E    Compensation of Officers (see instructions for line 12, page 1)

Note: Complete Schedule E only if total receipts (line 1a plus lines 4 through 10 on page 1) are $500,000 or more.

| 1  (a) Name of officer | (b) Social security number | (c) Percent of time devoted to business | Percent of corporation stock owned (d) Common | (e) Preferred | (f) Amount of compensation |
|---|---|---|---|---|---:|
| Arthur Kupperman | | 100.0% | % | % | 132,478. |
| Paulette Krelman | | 100.0% | 85.0% | % | 120,945. |
| E. Ross Browne | | 100.0% | 15.0% | % | 130,355. |
| | | % | % | % | |
| | | % | % | % | 383,778. |

| | | |
|---|---|---:|
| 2 | Total compensation of officers ................... | 383,778. |
| 3 | Compensation of officers claimed on Schedule A and elsewhere on return ................... | |
| 4 | Subtract line 3 from line 2. Enter the result here and on line 12, page 1 | 383,778. |

CPCA0212  12/19/02    Form 1120 (2002)

PTMC-006831

Form 1120 (2002)   PITTRA G.B. International, Inc.                    22-3834289          Page 3

**Schedule J   Tax Computation (see instructions)**

| | | | |
|---|---|---|---|
| 1 | Check if the corporation is a member of a controlled group (see sections 1561 and 1563) . . . . . . . . . . . ► ☐ | | |

Important: Members of a controlled group, see instructions.

2a If the box on line 1 is checked, enter the corporation's share of the $50,000, $25,000, & $9,925,000 taxable income brackets (in that order):

(1) $ _____   (2) $ _____   (3) $ _____

b Enter the corporation's share of: (1) Additional 5% tax (not more than $11,750) . . . . . . . $ _____
                                    (2) Additional 3% tax (not more than $100,000) . . . . . . . $ _____

| | |
|---|---|
| 3 | Income tax. Check if a qualified personal service corporation under section 448(d)(2)  ► ☐ |
|   | (see instructions) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . |  **3** |
| 4 | Alternative minimum tax (attach Form 4626) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4** |
| 5 | Add lines 3 and 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **5** |
| 6a | Foreign tax credit (attach Form 1118) . . . . . . . . . . . . . . . . . . . . . . . . . | **6a** |
| b | Possessions tax credit (attach Form 5735) . . . . . . . . . . . . . . . . . . . . . . | **6b** |
| c | Check: ☐ Nonconventional source fuel credit  ☐ QEV credit (attach Form 8834) . | **6c** |
| d | General business credit. Check box(es) and indicate which forms are attached. | |
|   | ☐ Form 3800 ☐ Form(s) (specify) . ► _____ | **6d** |
| e | Credit for prior year minimum tax (attach Form 8827) . . . . . . . . . . . . . . . . | **6e** |
| f | Qualified zone academy bond credit (attach Form 8860) . . . . . . . . . . . . . . | **6f** |
| 7 | Total credits. Add lines 6a through 6f . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **7** |
| 8 | Subtract line 7 from line 5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **8** |
| 9 | Personal holding company tax (attach Schedule PH (Form 1120)) . . . . . . . . . . . . . . . . . . . . . . . . . . | **9** |
| 10 | Other taxes. Check if from:  ☐ Form 4255  ☐ Form 8611  ☐ Form 8697 | |
|   | ☐ Form 8866  ☐ Other (attach schedule) . . . . . . . . . . . . . . . . . . . | **10** |
| 11 | Total tax. Add lines 8 through 10. Enter here and on line 31, page 1 . . . . . . . . . . . . . | **11** |

**Schedule K   Other Information (see instructions)**

| | | Yes | No |
|---|---|---|---|
| 1 | Check method of accounting: | | |
| a | ☐ Cash   b ☒ Accrual | | |
| c | ☐ Other (specify) ► _____ | | |
| 2 | See the instructions and enter the: | | |
| a | Business activity code no. ► _____ | | |
| b | Business activity ►  Import/Export | | |
| c | Product or service ►  Food Ingredients | | |
| 3 | At the end of the tax year, did the corporation own, directly or indirectly, 50% or more of the voting stock of a domestic corporation? (For rules of attribution, see section 267(c).) . . . . . . . . . . . . . . . . . . . . . . . | | X |
|   | If 'Yes,' attach a schedule showing: (a) name and employer identification number (EIN), (b) percentage owned, and (c) taxable income or (loss) before NOL and special deductions of such corporation for the tax year ending with or within your tax year. | | |
| 4 | Is the corporation a subsidiary in an affiliated group or a parent-subsidiary controlled group? . . . . . . . . . . . . | | X |
|   | If 'Yes,' enter name and EIN of the parent corporation | | |
|   | ► _____ | | |
| 5 | At the end of the tax year, did any individual, partnership, corporation, estate or trust own, directly or indirectly, 50% or more of the corporation's voting stock? (For rules of attribution, see section 267(c).) . . . . . | | X |
|   | If 'Yes,' attach a schedule showing name and identifying number. (Do not include any information already entered in 4 above.) | | |
|   | Enter % owned ► ____ 85.00  See Ques 5 Stmt | | |
| 6 | During this tax year, did the corporation pay dividends (other than stock dividends and distributions in exchange for stock) in excess of the corporation's current and accumulated earnings and profits? (See sections 301 and 316.) . . . . . . . . . . . . . . . . . . | | X |
|   | If 'Yes,' file Form 5452, Corporate Report of Nondividend Distributions. | | |
|   | If this is a consolidated return, answer here for the parent corporation and on Form 851, Affiliations Schedule, for each subsidiary. | | |

| | | Yes | No |
|---|---|---|---|
| 7 | At any time during the tax year, did one foreign person own, directly or indirectly, at least 25% of (a) the total voting power of all classes of stock of the corporation entitled to vote or (b) the total value of all classes of stock of the corporation? . . . . . . . . . . . . . . . . . . | | X |
|   | If 'Yes,' enter: (a) Percentage owned ► _____ | | |
|   | and (b) Owner's country ► _____ | | |
| c | The corporation may have to file Form 5472, Information Return of a 25% Foreign-Owned U.S. Corporation or a Foreign Corporation Engaged in a U.S. Trade or Business. Enter number of Forms 5472 attached . . . . . . . . . . . . . . . . ► | | |
| 8 | Check this box if the corporation issued publicly offered debt instruments with original issue discount . . . . . . . ► ☐ | | |
|   | If checked, the corporation may have to file Form 8281, Information Return for Publicly Offered Original Issue Discount Instruments. | | |
| 9 | Enter the amount of tax-exempt interest received or accrued during the tax year . . . . . . . . ► $ _____ | | |
| 10 | Enter the number of shareholders at the end of the tax year (if 75 or fewer) ► | | |
| 11 | If the corporation has an NOL for the tax year and is electing to forego the carryback period, check here . . . . . . . ► ☒ | | |
|   | If the corporation is filing a consolidated return, the statement required by Regulations section 1.1502-21(b)(3)(i) or (ii) must be attached or the election will not be valid. | | |
| 12 | Enter the available NOL carryover from prior tax years (Do not reduce it by any deduction on line 29a.) | | |
|   | ► $ _____ | | |
| 13 | Are the corporation's total receipts (line 1a plus lines 4 through 10 on page 1) for the tax year and its total assets at the end of the tax year less than $250,000? . . . . . . . . . . . | | X |
|   | If 'Yes,' the corporation is not required to complete Schedules L, M-1, and M-2 on page 4. Instead, enter the total amount of cash distributions and the book value of property distributions (other than cash) made during the tax year. ► $ ____ 127,891. | | |

**Note:** If the corporation, at any time during the tax year, had assets or operated a business in a foreign country or U.S. possession, it may be required to attach Schedule N (Form 1120), Foreign Operations of U.S. Corporations, to this return. See Schedule N for details.

BAA                           CPCA0234   12/19/02                           Form 1120 (2002)

**PTMC-006832**

Form 1120 (2002)   PITTRA G.B. International, Inc.        22-3834289        Page 4

Note: *The corporation is not required to complete Schedules L, M-1 and M-2 if Question 13 on Schedule K is answered 'Yes.'*

### Schedule L   Balance Sheets per Books

| | Beginning of tax year | | End of tax year | |
|---|---|---|---|---|
| **Assets** | (a) | (b) | (c) | (d) |
| 1 Cash | | 120,984. | | 31,289. |
| 2a Trade notes and accounts receivable | 6,289,123. | | 2,856,189. | |
| b Less allowance for bad debts | | 6,289,123. | | 2,856,189. 0. |
| 3 Inventories | | 834,898. | | 0. |
| 4 U.S. government obligations | | | | |
| 5 Tax-exempt securities (see instructions) | | 13,894. | | 0. |
| 6 Other current assets (attach schedule) Ln 6 Stmt | | | | |
| 7 Loans to shareholders | | | | |
| 8 Mortgage and real estate loans | | | | |
| 9 Other investments (attach schedule) | | 0. | | 0. |
| 10a Buildings and other depreciable assets | 52,345. | | 0. | |
| b Less accumulated depreciation | 7,458. | 44,887. | | 0. |
| 11a Depletable assets | | | | |
| b Less accumulated depletion | | | | |
| 12 Land (net of any amortization) | 1,400,000. | | | |
| 13a Intangible assets (amortizable only) | | 1,400,000. | | |
| b Less accumulated amortization | | | | |
| 14 Other assets (attach schedule) | | 8,703,786. | | 2,887,478. |
| 15 Total assets | | 8,703,786. | | 2,887,478. |
| **Liabilities and Shareholders' Equity** | | | | |
| 16 Accounts payable | | 3,745,902. | | 1,781,638. |
| 17 Mortgages, notes, bonds payable in less than 1 year | | 3,891,912. | | 2,435,892. |
| 18 Other current liabilities (attach sch) Ln 18 Stmt | | 78,128. | | 0. |
| 19 Loans from shareholders | | | | |
| 20 Mortgages, notes, bonds payable in 1 year or more | | 542,168. | | 542,168. |
| 21 Other liabilities (attach schedule) | | | | |
| 22 Capital stock: a Preferred stock | | 15,000. | 15,000. | 15,000. |
| b Common stock | 15,000. | 639,185. | | 639,185. |
| 23 Additional paid-in capital | | | | |
| 24 Retained earnings — Approp (att sch) | | | | |
| 25 Retained earnings — Unappropriated | | -208,509. | | -2,526,405. |
| 26 Adjmnt to shareholders' equity (att sch) | | | | |
| 27 Less cost of treasury stock | | | | |
| 28 Total liabilities and shareholders' equity | | 8,703,786. | | 2,887,478. |

### Schedule M-1   Reconciliation of Income (Loss) per Books With Income per Return (see instructions)

| | | | | |
|---|---|---|---|---|
| 1 Net income (loss) per books | -2,317,896. | 7 Income recorded on books this year not | | |
| 2 Federal income tax per books | 0. | included on this return (itemize): | | |
| 3 Excess of capital losses over capital gains | | Tax-exempt interest $ _____ | | |
| 4 Income subject to tax not recorded on books this year (itemize): | | | | |
| | | 8 Deductions on this return not charged | | |
| 5 Expenses recorded on books this year not deducted on this return (itemize): | | against book income this year (itemize): | | |
| a Depreciation ....... $ _____ | | a Depreciation .. $ _____ | | |
| b Charitable contributions . $ _____ | | b Charitable contribns $ _____ | | |
| c Travel & entertainment . $ _____ 10,892. | | | | |
| See Ln 5 Stmt _____ 1,400,000. | 1,410,892. | 9 Add lines 7 and 8 | | |
| 6 Add lines 1 through 5 | -907,004. | 10 Income (line 28, page 1) — line 6 less line 9 | | -907,004. |

### Schedule M-2   Analysis of Unappropriated Retained Earnings per Books (Line 25, Schedule L)

| | | | | |
|---|---|---|---|---|
| 1 Balance at beginning of year | -208,509. | 5 Distributions .............. a Cash | | |
| 2 Net income (loss) per books | -2,317,896. | b Stock        c Property | | |
| 3 Other increases (itemize): | | 6 Other decreases (itemize): | | |
| | | 7 Add lines 5 and 6 | | |
| 4 Add lines 1, 2, and 3 | -2,526,405. | 8 Balance at end of year (line 4 less line 7) | | -2,526,405. |

CPCA0234   12/19/02                                              Form 1120 (2002)

PTMC-006833

PITTRA G.B. International, ... 22-3834289                                                1

**Form 1120, Page 1, Line 10**
**Other Income Statement**

| | |
|---|---:|
| Sale of goodwill | 300,000. |
| Sale of equipment | 10,000. |
| Total | 310,000. |

**Form 1120, Page 1, Line 26**
**Other Deductions Statement**

| | |
|---|---:|
| Insurance | 62,784. |
| Office supplies and expenses | 28,945. |
| Courier services | 38,431. |
| Telephone | 7,398. |
| Laboratory testing | 11,945. |
| Dues and subscriptions | 14,298. |
| Travel expenses | 24,891. |
| Meals and entertainment (50%) | 10,892. |
| Bank charges | 34,571. |
| Legal fees | 83,190. |
| Office equipment rental | 17,472. |
| Office equipment maintenance | 4,871. |
| Total | 339,688. |

**Form 1120, Page 2, Sch A, Line 5**
**Other Costs Statement**

| | |
|---|---:|
| Ocean freight | 142,891. |
| Domestic trucking | 178,459. |
| Customs duty and entry | 206,781. |
| Demurrage | 23,894. |
| Insurance on shipments | 12,700. |
| Other costs | 62,781. |
| Total | 627,506. |

**Form 1120, Page 4, Schedule L, Line 6**
**Ln 6 Stmt**

| Other Current Assets: | Beginning of tax year | End of tax year |
|---|---:|---:|
| Prepaid insurance | 13,894. | 0. |
| Total | 13,894. | 0. |

PTMC-006834

PITTRA G.B. International, inc.    22-3834289                                          2

Form 1120, Page 4, Schedule L, Line 18
Ln 18 Stmt

| Other Current Liabilities: | Beginning of tax year | End of tax year |
|---|---|---|
| Accrued expenses | 78,128. | 0. |
| Total | 78,128. | 0. |

Form 1120, Sch K, Corporation Ownership Information
Ques 5 Stmt

| Name | ID No. |
|---|---|
| Paulette Krelman | |

Form 1120, Page 4, Schedule M-1, Line 5
Ln 5 Stmt

| | |
|---|---|
| Write-off of goodwill | 1,400,000. |
| Total | 1,400,000. |

PTMC-006835

Form **1120**  Department of the Treasury Internal Revenue Service

## U.S. Corporation Income Tax Return **2002**

▶ Instructions are separate. See instructions for Paperwork Reduction Act Notice.

IRS use only — Do not write or staple in this space.

OMB No. 1545-0123

For calendar year 2002 or tax year beginning **Oct 1**, 2002, ending **Sep 30**, 2003

**A** Check if a:
1 Consolidated return (attach Form 851) ☐
2 Personal holding company (attach Schedule PH) ☐
3 Personal service corp (as defined in Regs section 1.441-3(c) see instructions) ☐

Use IRS label. Otherwise, print or type.

**Name** PITTRA G.B. International, Inc.
**Number, street, and room or suite number** (If a P.O. box, see instructions.)
123 Madison Avenue
**City or town** Madison  **State** NJ  **ZIP Code** 07940

**B** Employer identification number
22-3834289

**C** Date incorporated
10/01/01

**D** Total assets (see instructions)
$ 2,887,478.

**E** Check applicable boxes: (1) Initial return ☐  (2) Final return ☐  (3) Name change ☐  (4) Address change ☐

| | | | | |
|---|---|---|---|---|
| **I N C O M E** | 1a Gross receipts or sales | 21,468,198. | b Less returns & allowances | c Balance ▶ 1c | 21,468,198. |
| | 2 Cost of goods sold (Schedule A, line 8) | | | 2 | 20,857,747. |
| | 3 Gross profit. Subtract line 2 from line 1c | | | 3 | 610,451. |
| | 4 Dividends (Schedule C, line 19) | | | 4 | |
| | 5 Interest | | | 5 | |
| | 6 Gross rents | | | 6 | |
| | 7 Gross royalties | | | 7 | |
| | 8 Capital gain net income (attach Schedule D (Form 1120)) | | | 8 | |
| | 9 Net gain or (loss) from Form 4797, Part II, line 18 (attach Form 4797) | | | 9 | |
| | 10 Other income (see instructions — attach schedule) .See.Other.Income.Statement | | | 10 | 310,000. |
| | 11 Total income. Add lines 3 through 10 | | | 11 | 920,451. |
| **D E D U C T I O N S** (SEE INSTRUCTIONS FOR LIMITATIONS ON DEDUCTIONS) | 12 Compensation of officers (Schedule E, line 4) | | | 12 | 383,778. |
| | 13 Salaries and wages (less employment credits) | | | 13 | 267,458. |
| | 14 Repairs and maintenance | | | 14 | |
| | 15 Bad debts | | | 15 | 368,904. |
| | 16 Rents | | | 16 | 68,808. |
| | 17 Taxes and licenses | | | 17 | 39,289. |
| | 18 Interest | | | 18 | 267,458. |
| | 19 Charitable contributions (see instructions for 10% limitation) | | | 19 | |
| | 20 Depreciation (attach Form 4562) | 20 | | 21a | |
| | 21 Less depreciation claimed on Schedule A and elsewhere on return | 21a | | 21b | |
| | 22 Depletion | | | 22 | |
| | 23 Advertising | | | 23 | 40,178. |
| | 24 Pension, profit-sharing, etc, plans | | | 24 | 51,894. |
| | 25 Employee benefit programs | | | 25 | 339,688. |
| | 26 Other deductions (attach schedule) .See.Other.Deductions.Statement | | | 26 | 1,827,455. |
| | 27 Total deductions. Add lines 12 through 26 | | | 27 | -907,004. |
| | 28 Taxable income before net operating loss deduction and special deductions. Subtract line 27 from line 11 | | | 28 | -907,004. |
| | 29 Less: a Net operating loss (NOL) deduction (see instructions) | 29a | | | |
| | b Special deductions (Schedule C, line 20) | 29b | | 29c | |
| **T A X   A N D   P A Y M E N T S** | 30 Taxable income. Subtract line 29c from line 28 | | | 30 | -907,004. |
| | 31 Total tax (Schedule J, line 11) | | | 31 | |
| | 32 Payments: a 2001 overpayment credited to 2002 | 32a | | | |
| | b 2002 estimated tax payments | 32b | | | |
| | c Less 2002 refund applied for on Form 4466 | 32c | d Bal ▶ | 32d | |
| | e Tax deposited with Form 7004 | | | 32e | |
| | f Credit for tax paid on undistributed capital gains (attach Form 2439) | 32f | | | |
| | g Credit for federal tax on fuels (attach Form 4136). See instructions | 32g | | 32h | |
| | 33 Estimated tax penalty (see instructions). Check if Form 2220 is attached ▶ ☐ | | | 33 | |
| | 34 Tax due. If line 32h is smaller than the total of lines 31 and 33, enter amount owed | | | 34 | |
| | 35 Overpayment. If line 32h is larger than the total of lines 31 and 33, enter amount overpaid | | | 35 | |
| | 36 Enter amount of line 35 you want: Credited to 2003 estimated tax ▶ | | | Refunded ▶ 36 | |

CoPY

**Sign Here**
Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Signature of officer _____  Date _____  Title _____

May the IRS discuss this return with the preparer shown below? (See inst)  ☐ Yes  ☐ No

**Paid Preparer's Use Only**
Preparer's signature _____  Date 12/13/03  Check if self-employed ☐  Preparer's SSN or PTIN _____
Firm's Name (or yours if self-employed), address, and ZIP Code ▶ Arthur Kupperman  43 HAMPSHIRE DR.  MENDHAM  NJ 07945-2003  EIN _____  Phone No. _____

BAA    CPCA0212  12/19/02    Form 1120 (2002)

PTMC-006836

Form 1120 (2002)   PITTRA G.B. International, Inc.                    22-3834289                    Page 2

### Schedule A   Cost of Goods Sold (see instructions)

| | | |
|---|---|---|
| 1 | Inventory at beginning of year | **1** 834,898. |
| 2 | Purchases | **2** 19,395,343. |
| 3 | Cost of labor | **3** |
| 4 | Additional Section 263A costs (attach schedule) | **4** |
| 5 | Other costs (attach schedule) ....See Other Costs Statement | **5** 627,506. |
| 6 | Total. Add lines 1 through 5 | **6** 20,857,747. |
| 7 | Inventory at end of year | **7** 0. |
| 8 | Cost of goods sold. Subtract line 7 from line 6. Enter here and on line 2, page 1 | **8** 20,857,747. |

9a Check all methods used for valuing closing inventory:
- (i) [ ] Cost as described in Regulations section 1.471-3
- (ii) [X] Lower of cost or market as described in Regulations section 1.471-4
- (iii) [ ] Other (specify method used and attach explanation.) ......► ............................................ ► [ ]

b Check if there was a writedown of subnormal goods as described in Regulations section 1.471-2(c) ..................... ► [ ]

c Check if the LIFO inventory method was adopted this tax year for any goods (if checked, attach Form 970) ............... ► [ ]

d If the LIFO inventory method was used for this tax year, enter percentage (or amounts) of closing inventory computed under LIFO ..................  **9d**

e If property is produced or acquired for resale, do the rules of section 263A apply to the corporation? ................... [ ] Yes [X] No

f Was there any change in determining quantities, cost, or valuations between opening and closing inventory? If 'Yes,' attach explanation ................................................ [ ] Yes [X] No

### Schedule C   Dividends and Special Deductions (see instructions)

| | (a) Dividends received | (b) Percentage | (c) Special deductions (a) x (b) |
|---|---|---|---|
| 1 Dividends from less-than-20%-owned domestic corporations that are subject to the 70% deduction (other than debt-financed stock) | | 70 | |
| 2 Dividends from 20%-or-more-owned domestic corporations that are subject to the 80% deduction (other than debt-financed stock) ..... | | 80 | |
| 3 Dividends on debt-financed stock of domestic and foreign corporations (section 246A) | | 42 | |
| 4 Dividends on certain preferred stock of less-than-20%-owned public utilities ........ | | 48 | |
| 5 Dividends on certain preferred stock of 20%-or-more-owned public utilities ...... | | | |
| 6 Dividends from less-than-20%-owned foreign corporations and certain FSCs that are subject to the 70% deduction ............. | | 70 | |
| 7 Dividends from 20%-or-more-owned foreign corporations and certain FSCs that are subject to the 80% deduction .......... | | 80 | |
| 8 Dividends from wholly owned foreign subsidiaries subject to the 100% deduction (section 245(b)) ...................... | | 100 | |
| 9 Total. Add lines 1 through 8. See instructions for limitation .......... | | | |
| 10 Dividends from domestic corporations received by a small business investment company operating under the Small Business Investment Act of 1958 .. | | 100 | |
| 11 Dividends from certain FSCs that are subject to the 100% deduction (section 245(c)(1)) ... | | 100 | |
| 12 Dividends from affiliated group members subject to the 100% deduction (section 243(a)(3)) .................. | | 100 | |
| 13 Other dividends from foreign corporations not included on lines 3, 6, 7, 8, or 11 ... | | | |
| 14 Income from controlled foreign corporations under subpart F (attach Form(s) 5471) ... | | | |
| 15 Foreign dividend gross-up (section 78) ............. | | | |
| 16 IC-DISC and former DISC dividends not included on lines 1, 2, or 3 (section 246(d)) ... | | | |
| 17 Other dividends ................. | | | |
| 18 Deduction for dividends paid on certain preferred stock of public utilities ........ | | | |
| 19 Total dividends. Add lines 1 through 17. Enter here and on line 4, page 1 ........ ► | | | |
| 20 Total special deductions. Add lines 9, 10, 11, 12, and 18. Enter here and on line 29b, page 1 ............................... ► | | | |

### Schedule E   Compensation of Officers (see instructions for line 12, page 1)

Note: Complete Schedule E only if total receipts (line 1a plus lines 4 through 10 on page 1) are $500,000 or more.

| 1 (a) Name of officer | (b) Social security number | (c) Percent of time devoted to business | Percent of corporation stock owned | | (f) Amount of compensation |
|---|---|---|---|---|---|
| | | | (d) Common | (e) Preferred | |
| Arthur Kupperman | | 100.0% | % | % | 132,478. |
| Paulette Krelman | | 100.0% | 85.0% | % | 120,945. |
| E. Ross Browne | | 100.0% | 15.0% | % | 130,355. |
| | | % | % | % | |
| | | % | % | % | 383,778. |

| | | |
|---|---|---|
| 2 Total compensation of officers ................. | | 383,778. |
| 3 Compensation of officers claimed on Schedule A and elsewhere on return ............... | | |
| 4 Subtract line 3 from line 2. Enter the result here and on line 12, page 1 ............ | | 383,778. |

CPCA0212  12/19/02                                                             Form 1120 (2002)

PTMC-006837

Form 1120 (2002)   PITTRA G.B. International, Inc.                          22-3834289          Page 3

**Schedule J    Tax Computation** (see instructions)

| | |
|---|---|
| 1 Check if the corporation is a member of a controlled group (see sections 1561 and 1563) ............ ► | ☐ |

**Important:** Members of a controlled group, see instructions.

2 a If the box on line 1 is checked, enter the corporation's share of the $50,000, $25,000, & $9,925,000 taxable income brackets (in that order):

(1) $ _____   (2) $ _____   (3) $ _____

b Enter the corporation's share of: (1) Additional 5% tax (not more than $11,750) ........ $ _____
  (2) Additional 3% tax (not more than $100,000) ........ $ _____

| | | |
|---|---|---|
| 3 Income tax. Check if a qualified personal service corporation under section 448(d)(2) (see instructions) ...................................................... ► ☐ | 3 | |
| 4 Alternative minimum tax (attach Form 4626) ................................................ | 4 | |
| 5 Add lines 3 and 4 ........................................................................ | 5 | |
| 6a Foreign tax credit (attach Form 1118) .......................................... | 6a | |
| b Possessions tax credit (attach Form 5735) .................................... | 6b | |
| c Check: ☐ Nonconventional source fuel credit  ☐ QEV credit (attach Form 8834) | 6c | |
| d General business credit. Check box(es) and indicate which forms are attached. | | |
|   ☐ Form 3800  ☐ Form(s) (specify) ► _____ | 6d | |
| e Credit for prior year minimum tax (attach Form 8827) .......................... | 6e | |
| f Qualified zone academy bond credit (attach Form 8860) ........................ | 6f | |
| 7 Total credits. Add lines 6a through 6f ..................................................... | 7 | |
| 8 Subtract line 7 from line 5 ................................................................ | 8 | |
| 9 Personal holding company tax (attach Schedule PH (Form 1120)) ............................. | 9 | |
| 10 Other taxes. Check if from: ☐ Form 4255  ☐ Form 8611  ☐ Form 8697 | | |
|   ☐ Form 8866  ☐ Other (attach schedule) ................................. | 10 | |
| 11 Total tax. Add lines 8 through 10. Enter here and on line 31, page 1 ........................ | 11 | |

**Schedule K    Other Information** (see instructions)

| | | Yes | No |
|---|---|---|---|
| 1 | Check method of accounting: | | |
| a | ☐ Cash  b ☒ Accrual | | |
| c | ☐ Other (specify) ► _____ | | |
| 2 | See the instructions and enter the: | | |
| a | Business activity code no. ► _____ | | |
| b | Business activity ► Import/Export | | |
| c | Product or service ► Food Ingredients | | |
| 3 | At the end of the tax year, did the corporation own, directly or indirectly, 50% or more of the voting stock of a domestic corporation? (For rules of attribution, see section 267(c).) | | X |
| | If 'Yes,' attach a schedule showing: (a) name and employer identification number (EIN), (b) percentage owned, and (c) taxable income or (loss) before NOL and special deductions of such corporation for the tax year ending with or within your tax year. | | |
| 4 | Is the corporation a subsidiary in an affiliated group or a parent-subsidiary controlled group? | | X |
| | If 'Yes,' enter name and EIN of the parent corporation ► _____ | | |
| 5 | At the end of the tax year, did any individual, partnership, corporation, estate or trust own, directly or indirectly, 50% or more of the corporation's voting stock? (For rules of attribution, see section 267(c).) | | X |
| | If 'Yes,' attach a schedule showing name and identifying number. (Do not include any information already entered in 4 above.) | | |
| | Enter % owned ► 85.00   See Ques 5 Stmt | | |
| 6 | During this tax year, did the corporation pay dividends (other than stock dividends and distributions in exchange for stock) in excess of the corporation's current and accumulated earnings and profits? (See sections 301 and 316.) | | X |
| | If 'Yes,' file Form 5452, Corporate Report of Nondividend Distributions. If this is a consolidated return, answer here for the parent corporation and on Form 851, Affiliations Schedule, for each subsidiary. | | |

| | | Yes | No |
|---|---|---|---|
| 7 | At any time during the tax year, did one foreign person own, directly or indirectly, at least 25% of (a) the total voting power of all classes of stock of the corporation entitled to vote or (b) the total value of all classes of stock of the corporation? | | X |
| | If 'Yes,' enter: (a) Percentage owned ► _____ and (b) Owner's country ► _____ | | |
| c | The corporation may have to file Form 5472, Information Return of a 25% Foreign-Owned U.S. Corporation or a Foreign Corporation Engaged in a U.S. Trade or Business. Enter number of Forms 5472 attached ► | | |
| 8 | Check this box if the corporation issued publicly offered debt instruments with original issue discount ....... ☐ | | |
| | If checked, the corporation may have to file Form 8281, Information Return for Publicly Offered Original Issue Discount Instruments. | | |
| 9 | Enter the amount of tax-exempt interest received or accrued during the tax year ► $ _____ | | |
| 10 | Enter the number of shareholders at the end of the tax year (if 75 or fewer) ► | | |
| 11 | If the corporation has an NOL for the tax year and is electing to forego the carryback loss, check here .......... ► ☒ | | |
| | If the corporation is filing a consolidated return, the statement required by Regulations section 1.1502-21(b)(3)(i) or (ii) must be attached or the election will not be valid. | | |
| 12 | Enter the available NOL carryover from prior tax years (Do not reduce it by any deduction on line 29a.) ► $ 127,891. | | |
| 13 | Are the corporation's total receipts (line 1a plus lines 4 through 10 on page 1) for the tax year and its total assets at the end of the tax year less than $250,000? ...... | | X |
| | If 'Yes,' the corporation is not required to complete Schedules L, M-1, and M-2 on page 4. Instead, enter the total amount of cash distributions and the book value of property distributions (other than cash) made during the tax year. ► $ _____ | | |

**Note:** *If the corporation, at any time during the tax year, had assets or operated a business in a foreign country or U.S. possession, it may be required to attach Schedule N (Form 1120), Foreign Operations of U.S. Corporations, to this return. See Schedule N for details.*

BAA                                   CPCA0234   12/19/02                          Form 1120 (2002)

PTMC-006838

Form 1120 (2002)   PITTRA G.B. International, Inc.   22-3834289   Page 4

Note: *The corporation is not required to complete Schedules L, M-1 and M-2 if Question 13 on Schedule K is answered 'Yes.'*

### Schedule L — Balance Sheets per Books

| Assets | Beginning of tax year (a) | (b) | End of tax year (c) | (d) |
|---|---|---|---|---|
| 1 Cash | | 120,984. | | 31,289. |
| 2a Trade notes and accounts receivable | 6,289,123. | | 2,856,189. | |
| b Less allowance for bad debts | | 6,289,123. | | 2,856,189. |
| 3 Inventories | | 834,898. | | 0. |
| 4 U.S. government obligations | | | | |
| 5 Tax-exempt securities (see instructions) | | 13,894. | | 0. |
| 6 Other current assets (attach schedule) Ln 6 Stmt | | | | |
| 7 Loans to shareholders | | | | |
| 8 Mortgage and real estate loans | | | | |
| 9 Other investments (attach schedule) | | 0. | | |
| 10a Buildings and other depreciable assets | 52,345. | | 0. | |
| b Less accumulated depreciation | 7,458. | 44,887. | | 0. |
| 11a Depletable assets | | | | |
| b Less accumulated depletion | | | | |
| 12 Land (net of any amortization) | | | | |
| 13a Intangible assets (amortizable only) | 1,400,000. | 1,400,000. | | |
| b Less accumulated amortization | | | | |
| 14 Other assets (attach schedule) | | 8,703,786. | | 2,887,478. |
| 15 Total assets | | | | |
| **Liabilities and Shareholders' Equity** | | | | |
| 16 Accounts payable | | 3,745,902. | | 1,781,638. |
| 17 Mortgages, notes, bonds payable in less than 1 year | | 3,891,912. | | 2,435,892. |
| 18 Other current liabilities (attach sch) Ln 18 Stmt | | 78,128. | | 0. |
| 19 Loans from shareholders | | 542,168. | | 542,168. |
| 20 Mortgages, notes, bonds payable in 1 year or more | | | | |
| 21 Other liabilities (attach schedule) | | | | |
| 22 Capital stock: a Preferred stock | | | | |
| b Common stock | 15,000. | 15,000. | 15,000. | 15,000. |
| 23 Additional paid-in capital | | 639,185. | | 639,185. |
| 24 Retained earnings — Approp (att sch) | | | | |
| 25 Retained earnings — Unappropriated | | -208,509. | | -2,526,405. |
| 26 Adjmnt to shareholders' equity (att sch) | | | | |
| 27 Less cost of treasury stock | | | | |
| 28 Total liabilities and shareholders' equity | | 8,703,786. | | 2,887,478. |

### Schedule M-1 — Reconciliation of Income (Loss) per Books With Income per Return (see instructions)

| | | | |
|---|---|---|---|
| 1 Net income (loss) per books | -2,317,896. | 7 Income recorded on books this year not included on this return (itemize): | |
| 2 Federal income tax per books | 0. | Tax-exempt interest $ _ _ _ _ _ | |
| 3 Excess of capital losses over capital gains | | | |
| 4 Income subject to tax not recorded on books this year (itemize): | | | |
| | | 8 Deductions on this return not charged against book income this year (itemize): | |
| | | a Depreciation $ _ _ _ _ _ | |
| 5 Expenses recorded on books this year not deducted on this return (itemize): | | b Charitable contribns $ _ _ _ _ _ | |
| a Depreciation $ _ _ _ _ _ | | _ _ _ _ _ _ _ _ _ _ | |
| b Charitable contributions $ _ _ _ _ _ | | _ _ _ _ _ _ _ _ _ _ | |
| c Travel & entertainment $ _ _ 10,892. | | | |
| See Ln 5 Stmt _ _ 1,400,000. | 1,410,892. | 9 Add lines 7 and 8 | |
| 6 Add lines 1 through 5 | -907,004. | 10 Income (line 28, page 1) — line 6 less line 9 | -907,004. |

### Schedule M-2 — Analysis of Unappropriated Retained Earnings per Books (Line 25, Schedule L)

| | | | |
|---|---|---|---|
| 1 Balance at beginning of year | -208,509. | 5 Distributions: a Cash | |
| 2 Net income (loss) per books | -2,317,896. | b Stock   c Property | |
| 3 Other increases (itemize): | _ _ _ _ _ | 6 Other decreases (itemize): | |
| | | 7 Add lines 5 and 6 | |
| 4 Add lines 1, 2, and 3 | -2,526,405. | 8 Balance at end of year (line 4 less line 7) | -2,526,405. |

CPCA0234   12/19/02   Form 1120 (2002)

PTMC-006839

PITTRA G.B. International, ...    22-3834289                                                1

Form 1120, Page 1, Line 10
**Other Income Statement**

| | |
|---|---|
| Sale of goodwill | 300,000. |
| Sale of equipment | 10,000. |
| Total | 310,000. |

Form 1120, Page 1, Line 26
**Other Deductions Statement**

| | |
|---|---|
| Insurance | 62,784. |
| Office supplies and expenses | 28,945. |
| Courier services | 38,431. |
| Telephone | 7,398. |
| Laboratory testing | 11,945. |
| Dues and subscriptions | 14,298. |
| Travel expenses | 24,891. |
| Meals and entertainment (50%) | 10,892. |
| Bank charges | 34,571. |
| Legal fees | 83,190. |
| Office equipment rental | 17,472. |
| Office equipment maintenance | 4,871. |
| Total | 339,688. |

Form 1120, Page 2, Sch A, Line 5
**Other Costs Statement**

| | |
|---|---|
| Ocean freight | 142,891. |
| Domestic trucking | 178,459. |
| Customs duty and entry | 206,781. |
| Demurrage | 23,894. |
| Insurance on shipments | 12,700. |
| Other costs | 62,781. |
| Total | 627,506. |

Form 1120, Page 4, Schedule L, Line 6
Ln 6 Stmt

| | Beginning of tax year | End of tax year |
|---|---|---|
| **Other Current Assets:** | | |
| Prepaid insurance | 13,894. | 0. |
| Total | 13,894. | 0. |

PTMC-006840

PITTRA G.B. International, Inc.   22-3834289                                           2

Form 1120, Page 4, Schedule L, Line 18
**Ln 18 Stmt**

| Other Current Liabilities: | Beginning of tax year | End of tax year |
|---|---|---|
| Accrued expenses | 78,128. | 0. |
| Total | 78,128. | 0. |

Form 1120, Sch K, Corporation Ownership Information
**Ques 5 Stmt**

| Name | ID No. |
|---|---|
| Paulette Krelman | |

Form 1120, Page 4, Schedule M-1, Line 5
**Ln 5 Stmt**

| Write-off of goodwill | 1,400,000. |
|---|---|
| Total | 1,400,000. |

# EXHIBIT "E"

# Merrill Lynch

| MERRILL LYNCH BUSINESS FINANCIAL SERVICES INC. | Personal Financial Statement |
|---|---|

Date _Apr 26, 2005_

## INDIVIDUAL INFORMATION:

Name: _Paulozzo Raclyan_    Social Security Number: _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_    Birth Date: _06, 31, 1946_

Joint Owner's Name*: _____    Social Security Number: _____    Birth Date: _/ /_

Residence Street Address: _43 Hampshin Dr_    Residence Phone: _973-543-7353_

City: _Mendham_    State: _NJ_    Zip: _07945_

Business Name: _Pizzaa L.B. International_    Business Phone: _973-401-900_

Business Street Address: _6 South Street_

City: _Morristown_    State: _NJ_    Zip: _07960_

*If any, or if applicant is resident of or any property listed below is located in a community property state.

## FINANCIAL INFORMATION:

Clearly identify by checking the appropriate box(es) if assets are held and liabilities are owed individually ("I"), Jointly ("J") and/or in trust, partnership or other form ("T").

| ASSETS | Type(s) of Ownership | Dollars | LIABILITIES | Type(s) of Liability | Dollars |
|---|---|---|---|---|---|
| Cash on hand and in banks | ☒I ☐J ☐T | $ 40.00 | Notes payable to banks – Secured | ☐I ☐J ☐T | $ – |
| Marketable Securities (Schedule A) | ☒I ☐J ☐T | $ 32.00 | Notes payable to banks – Unsecured | ☐I ☐J ☐T | $ – |
| Non-Marketable Securities (Schedule B) | ☒I ☐J ☐T | $ 2,500.00 | Due to brokers | ☐I ☐J ☐T | $ – |
| Securities held by broker in margin accounts | ☐I ☐J ☐T | $ – | Amounts payable to others – Secured | ☐I ☐J ☐T | $ – |
| Restricted or control securities | ☐I ☐J ☐T | $ – | Amounts payable to others – Unsecured | ☐I ☐J ☐T | $ – |
| Partial Interest in Real Estate Equities Schedule C) | ☐I ☐J ☐T | $ – | Accounts and bills due | ☐I ☐J ☐T | $ – |
| Real Estate Owned (Schedule D) | ☐I ☐J ☐T | $ – | Unpaid income tax | ☐I ☐J ☐T | $ – |
| Loans Receivable | ☐I ☐J ☐T | $ – | Other unpaid taxes and interest | ☐I ☐J ☐T | $ – |
| Automotive and other Personal Property | ☒I ☐J ☐T | $ 30.00 | Real Estate mortgages payable (see Schedule D) | ☐I ☐J ☐T | $ – |
| Cash value – Life insurance (Schedule E) | ☐I ☐J ☐T | $ | Other debts – itemize: | ☐I ☐J ☐T | $ |
| Other assets – itemize: | ☐I ☐J ☐T | $ | | | |
| _Retirement Plans_ | ☒I ☐J ☐T | $ 130.00 | | | |
| _Other Personal Prop_ | ☐I ☐J ☐T | $ 30.00 | TOTAL LIABILITIES | | $ 782.00 |
| | | | NET WORTH | | $ 2782.00 |
| TOTAL ASSETS | | $ 2702.00 | TOTAL LIABILITIES AND NET WORTH | | $ 2782.00 |

Are all bad and doubtful assets excluded from this financial statement? _Yes_    If no, explain: _____

| ANNUAL SOURCES OF INCOME | | | LIST CONTINGENT LIABILITIES | | |
|---|---|---|---|---|---|
| Salary, bonus & commissions | ☒I ☐J ☐T | $ 260.00 | As endorser or guarantor | ☒I ☐J ☐T | $ 4.00 |
| Dividends | ☐I ☐J ☐T | $ 1.00 | On leases and contracts | ☐I ☐J ☐T | $ – |
| Real estate income | ☐I ☐J ☐T | $ | Legal claims | ☐I ☐J ☐T | $ – |
| Other income (alimony, child support or separate maintenance income need not be disclosed) | ☐I ☐J ☐T | $ | Other | ☐I ☐J ☐T | $ – |
| | | | Contested income tax liens | ☐I ☐J ☐T | $ – |
| TOTAL | | $ 261.00 | | | |

Code 0685 11/00

Page 1 of 3

## GENERAL INFORMATION:

**EXPLAIN ANY YES ANSWERS FULLY ON A SEPARATE SHEET OF PAPER**

| | |
|---|---|
| ☐ Yes ☑ No | Are any of the assets listed herein held under a trust agreement, in an estate, partnership or in any other name or capacity? |
| ☐ Yes ☑ No | Are any of the assets listed herein located in the states with community property systems of Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Texas, Washington and/or Wisconsin? If married, identify which assets and provide name and address of spouse. |
| ☐ Yes ☑ No | Are any of your assets pledged to secure any debts? If so, identify assets and debts they secure. |
| ☐ Yes ☑ No | Are you presently or have you been during the previous 7 years delinquent or in default on any federal debt or any other loan, mortgage, financial obligation, bond or guarantee? |
| ☐ Yes ☑ No | Are you obligated to pay alimony, child support or maintenance payments? |
| ☐ Yes ☐ No | Personal income tax returns have been filed through (year) _2004_ and settled through (year) _2004_ Are any income tax returns, whether personal or those of any corporation, partnership or other entity in which you are (were) a major owner* or a general partner, currently being audited or contested? |
| ☐ Yes ☑ No | Are you a defendant in, or the subject of a claim in, any lawsuits or legal actions? |
| ☐ Yes ☑ No | Are any of your real estate properties used by you in your business? |
| ☐ Yes ☑ No | Have you or any corporation, partnership or other entity in which you are (were) a major owner* or a general partner ever filed for or been subject to a bankruptcy; had property you or it owned foreclosed; or made a settlement with or an assignment for the benefit of creditors? |
| ☐ Yes ☑ No | Are you, or any corporation, partnership or other entity in which you are (were) a major owner* or a general partner, a party to any suit or legal action; or are there any unsatisfied judgements against you or any corporation, partnership or other entity in which you are (were) a major owner* or a general partner? |

\* Major owner means a managing member, 20% or more limited partnership or limited liability company, or 20% or more stock ownership

Are you or a joint owner or spouse (A) an executive officer or director of Merrill Lynch & Co., Inc. or any of its subsidiaries, or (B) a holder of more than 10% of any class of voting securities of Merrill Lynch & Co., Inc. or any of its subsidiaries? ("Control" means the power to vote 25% or more of any class of voting securities; the ability to control the election of a majority of directors; or the power to exercise a controlling influence over management policies.) ☐ Yes ☑ No  If yes, please identify the executive officer, director or 10% shareholder and the Merrill Lynch & Co., Inc. companies as to which they serve _____

_____

List all entities in which you are a partner, member or officer: _Pizza C.B. Incorporation Inc_

_____

_____

Personal bank and brokerage accounts carried at _Wachovia Bank_   _Smith Barney_

_____

Code 0685 11/00                                    Page 2 of 3

## Schedule A – U.S. Government and Marketable Securities

| No. of Shares or Face value (Bonds) | Description | In Name of | Market Value | Source of Value |
|---|---|---|---|---|
| | | | | |
| | | | | |

## Schedule B – Non-Marketable Securities

| Description of Securities | No. of Securities Owned | Stock Value Per Financial Statement | No. of Securities Outstanding | Total Value |
|---|---|---|---|---|
| Pittas CB | 8 5 | | 1 0 0 | 2,500,00 |
| Industries | | | | |

## Schedule C – Patrial Interests in Real Estate Equities

| Location of Property | % of Ownership | Type | Year of Purchase | Cost (C) or Market (M) | Mortgage | Monthly Principal & Interest | Value of Equity |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

## Schedule D – Real Estate Owned

| Description of Property and Improvements | Date Acquired | Title in Name of | Cost | Market Value | Mortgage | | |
|---|---|---|---|---|---|---|---|
| | | | | | Amount | Maturity | Monthly Principal & Interest |
| | | | | | | | |
| | | | | | | | |

## Schedule E – Insurance (Life, Group, etc.)

| Face Amount | Name of Company | Beneficiary | Cash Surrender Value | Loans | Monthly Principal & Interest |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |

## Schedule F – Name of Banks or other lenders where credit has been obtained

| Bank/Lender | Original Amount/Line | Original Date | Owe Currently | Secured or Unsecured | Monthly Principal & Interest |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |

The undersigned jointly and severally hereby (i) certify that each page of this financial statement and all supporting or additional financial information submitted to Merrill Lynch Business Financial Services Inc. ("MLBFS") presents a true, complete and correct statement of the financial condition of the undersigned; and (ii) authorize MLBFS to contact, investigate, inquire and obtain consumer reports, references and other information on the undersigned from consumer reporting agencies and other credit reporting services, former or current creditors, and other persons and sources (including, without limitation, affiliates of MLBFS), and to provide to any references, consumer reporting agencies, credit reporting services, creditors and other persons and sources (including, without limitation, affiliates of MLBFS), all financial, credit and other information obtained by MLBFS regarding the undersigned.

Signature _____

Print Name  Prokopis Kavour     Date  5/11/05

Signature _____

Print Name _____  Date _____

Code 0685 11/00                    Page 3 of 3

# EXHIBIT "F"



**Merrill Lynch**

| MERRILL LYNCH BUSINESS FINANCIAL SERVICES INC. | Personal Financial Statement |
|---|---|

Date _May 26, 2005_

### INDIVIDUAL INFORMATION:

Name: _Arthur Kupperman_  Social Security Number: _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_  Birth Date: _00, 23, 1940_

Joint Owner's Name*: _____  Social Security Number: _____  Birth Date: __/__/__

Residence Street Address: _43 Hawkins Dr_  Residence Phone: _973-543-7393_

City: _Mendham_  State: _NJ_  Zip: _07945_

Business Name: _Pizza & Entertainment_  Business Phone: _973-401-9000_

Business Street Address: _6 South Street_

City: _Morristown_  State: _NJ_  Zip: _07960_

*If any, or if applicant is resident of or any property listed below is located in a community property state.

### FINANCIAL INFORMATION:

Clearly identify by checking the appropriate box(es) if assets are held and liabilities are owed individually ("I"), Jointly ("J") and/or in trust, partnership or other form ("T").

| ASSETS | Type(s) of Ownership | Dollars | LIABILITIES | Type(s) of Liability | Dollars |
|---|---|---|---|---|---|
| Cash on hand and in banks | ☒I ☐J ☐T | $52,735 | Notes payable to banks – Secured | ☒I ☐J ☐T | $24,200 |
| Marketable Securities (Schedule A) | ☒I ☐J ☐T | $62,355 | Notes payable to banks – Unsecured | ☐I ☐J ☐T | $ — |
| Non-Marketable Securities (Schedule B) | ☒I ☐J ☐T | $380,000 | Due to brokers | ☐I ☐J ☐T | $ |
| Securities held by broker in margin accounts | ☐I ☐J ☐T | $ — | Amounts payable to others – Secured | ☐I ☐J ☐T | $ — |
| Restricted or control securities | ☐I ☐J ☐T | $ — | Amounts payable to others – Unsecured | ☐I ☐J ☐T | $ — |
| Partial Interest in Real Estate Equities Schedule C) | ☒I ☐J ☐T | $280,000 | Accounts and bills due | ☐I ☐J ☐T | $ — |
| Real Estate Owned (Schedule D) | ☐I ☐J ☐T | $ — | Unpaid income tax | ☐I ☐J ☐T | $ — |
| Loans Receivable | ☒I ☐J ☐T | $572,015 | Other unpaid taxes and interest | ☐I ☐J ☐T | $ — |
| Automotive and other Personal Property | ☒I ☐J ☐T | $85,000 | Real Estate mortgages payable (see Schedule D) | ☐I ☐J ☐T | $ — |
| Cash value – Life insurance (Schedule E) | ☐I ☐J ☐T | $ — | Other debts – itemize: | ☐I ☐J ☐T | $ |
| Other assets – itemize: | ☐I ☐J ☐T | $ | | | |
| _Retirement accts_ | ☒I ☐J ☐T | $145,000 | | | |
| _IP Companies_ | ☒I ☐J ☐T | $130,000 | TOTAL LIABILITIES | | $24,200 |
| | | | NET WORTH | | $1,632,885 |
| TOTAL ASSETS | | $1,657,005 | TOTAL LIABILITIES AND NET WORTH | | $1,657,005 |

Are all bad and doubtful assets excluded from this financial statement? _Yes_  If no, explain: _____

| ANNUAL SOURCES OF INCOME | | | LIST CONTINGENT LIABILITIES | | |
|---|---|---|---|---|---|
| Salary, bonus & commissions | ☒I ☐J ☐T | $335,000 | As endorser or guarantor | ☐I ☐J ☐T | $ — |
| Dividends | ☒I ☐J ☐T | $5,000 | On leases and contracts | ☐I ☐J ☐T | $ — |
| Real estate income | ☒I ☐J ☐T | $30,000 | Legal claims | ☒I ☐J ☐T | $1,000 |
| Other income (alimony, child support or separate maintenance income need not be disclosed) | ☐I ☐J ☐T | $ | Other | ☐I ☐J ☐T | $ — |
| | | | Contested income tax liens | ☐I ☐J ☐T | $ — |
| TOTAL | | $370,000 | | | |

Code 0685 11/00

## GENERAL INFORMATION:

EXPLAIN ANY YES ANSWERS FULLY ON A SEPARATE SHEET OF PAPER

| | | |
|---|---|---|
| ☒ Yes ☐ No | Are any of the assets listed herein held under a trust agreement, in an estate, partnership or in any other name or capacity? *SEE Schedule B + C* | |
| ☐ Yes ☒ No | Are any of the assets listed herein located in the states with community property systems of Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Texas, Washington and/or Wisconsin? If married, identify which assets and provide name and address of spouse. | |
| ☒ Yes ☐ No | Are any of your assets pledged to secure any debts? If so, identify assets and debts they secure. *Auto Loan* | |
| ☐ Yes ☒ No | Are you presently or have you been during the previous 7 years delinquent or in default on any federal debt or any other loan, mortgage, financial obligation, bond or guarantee? | |
| ☐ Yes ☒ No | Are you obligated to pay alimony, child support or maintenance payments? | |
| ☒ Yes ☐ No | Personal income tax returns have been filed through (year) *2004* and settled through (year) *2004*. Are any income tax returns, whether personal or those of any corporation, partnership or other entity in which you are (were) a major owner* or a general partner, currently being audited or contested? | |
| ☐ Yes ☒ No | Are you a defendant in, or the subject of a claim, in any lawsuits or legal actions? | |
| ☐ Yes ☒ No | Are any of your real estate properties used by you in your business? | |
| ☒ Yes ☐ No | Have you or any corporation, partnership or other entity in which you are (were) a major owner* or a general partner ever filed for or been subject to a bankruptcy; had property you or it owned foreclosed; or made a settlement with or an assignment for the benefit or creditors? *Personal Bankruptcy 1999* | |
| ☐ Yes ☒ No | Are you, or any corporation, partnership or other entity in which you are (were) a major owner* or a general partner, a party to any suit or legal action; or are there any unsatisfied judgements against you or any corporation, partnership or other entity in which you are (were) a major owner* or a general partner? | |

* Major owner means a managing member, 20% or more limited partnership or limited liability company, or 20% or more stock ownership

Are you or a joint owner or spouse (A) an executive officer or director of Merrill Lynch & Co., Inc. or any of its subsidiaries, or (B) a holder of more than 10% of any class of voting securities of Merrill Lynch & Co., Inc. or any of its subsidiaries? ("Control" means the power to vote 25% or more of any class of voting securities; the ability to control the election of a majority of directors; or the power to exercise a controlling influence over management policies). ☐ Yes ☒ No  If yes, please identify the executive officer, director or 10% shareholder and the Merrill Lynch & Co., Inc. companies as to which they serve

List all entities in which you are a partner, member or officer: *Little G. B. International, Inc.*
*Koutsomitis Family Partnership Investments    Koutsomitis Family Realty Investm-*
*Koutsomitis Family Foundation*

Personal bank and brokerage accounts carried at *JP Morgan Chase*

Code 0685 11/00                    Page 2 of 3

## Schedule A – U.S. Government and Marketable Securities

| No. of Shares or Face value (Bonds) | Description | In Name of | Market Value | Source of Value |
|---|---|---|---|---|
| Various comm. Stocks | Various comm. stocks | Ashner Kippma | 62,350 | FMV |

## Schedule B – Non-Marketable Securities

| Description of Securities | No. of Securities Owned | Stock Value Per Financial Statement | No. of Securities Outstanding | Total Value |
|---|---|---|---|---|
| Kippman form Investment | 3% | 300,000 | | 300,000 |

## Schedule C – Partial Interests in Real Estate Equities

| Location of Property | % of Ownership | Type | Year of Purchase | Cost (C) or Market (M) | Mortgage | Monthly Principal & Interest | Value of Equity |
|---|---|---|---|---|---|---|---|
| New Jersey | 3% | Commercial | 1992 | | | | 200,000 |

## Schedule D – Real Estate Owned

| Description of Property and Improvements | Date Acquired | Title in Name of | Cost | Market Value | Mortgage Amount | Maturity | Monthly Principal & Interest |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

## Schedule E – Insurance (Life, Group, etc.)

| Face Amount | Name of Company | Beneficiary | Cash Surrender Value | Loans | Monthly Principal & Interest |
|---|---|---|---|---|---|
| | | | | | |

## Schedule F – Name of Banks or other lenders where credit has been obtained

| Bank/Lender | Original Amount/Line | Original Date | Owe Currently | Secured or Unsecured | Monthly Principal & Interest |
|---|---|---|---|---|---|
| Capital Auto Fina | 35,000 | 6/04 | 24,200 | Secured | 600 |

The undersigned jointly and severally hereby (i) certify that each page of this financial statement and all supporting or additional financial information submitted to Merrill Lynch Business Financial Services Inc. ("MLBFS") presents a true, complete and correct statement of the financial condition of the undersigned; and (ii) authorize MLBFS to contact, investigate, inquire and obtain consumer reports, references and other information on the undersigned from consumer reporting agencies and other credit reporting services, former or current creditors, and other persons and sources (including, without limitation, affiliates of MLBFS), and to provide to any references, consumer reporting agencies, credit reporting services, creditors and other persons and sources (including, without limitation, affiliates of MLBFS), all financial, credit and other information obtained by MLBFS regarding the undersigned.

Signature _____   Signature _____

Print Name _____   Date 5/16/05   Print Name _____   Date _____

Code 0685 11/00   Page 3 of 3

# EXHIBIT "G"

**18. Nature, location and name of business**

None ☐    a.    If the debtor is an individual, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partnership, sole proprietorship, or was self-employed in a trade, profession, or other activity either full- or part-time within six years immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within the six years immediately preceding the commencement of this case.

If the debtor is a partnership, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within the six years immediately preceding the commencement of this case.

If the debtor is a corporation, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within the six years immediately preceding the commencement of this case.

| NAME | TAXPAYER I.D. NO. (EIN) | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
|------|-------------------------|---------|--------------------|----------------------------|
| PGB International, Inc. | 20-0011885 | 6 South Street Morristown, NJ 07960 | | 85% shareholder |
| Pittra G.B. International, Inc. | | 123 Madison Avenue Madison, NJ | | 85% shareholder |

b. Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101.

None ☒

NAME                                                                                    ADDRESS

**[Questions 19 - 25 are not applicable to this case]**

\* \* \* \* \* \*

*[If completed by an individual or individual and spouse]*

I declare under penalty of perjury that I have read the answers contained in the foregoing Statement of financial affairs and any attachments thereto and that they are true and correct.

Date    January 3, 2007                                    Signature
                                                           of Debtor    PAULETTE KRELMAN

Bankruptcy2006 ©1991-2006, New Hope Software, Inc., ver. 4.1.1-688 - 32480